VILLAGE OF LANNON, Plaintiff-Respondent,

v.

WOOD-LAND CONTRACTORS, INC., Defendant-Appellant-Petitioner,

Mary L. BARNEKOW, Defendant.

Supreme Court

*No. 02-0236. Oral argument September 11, 2003.—Decided December 4, 2003.*

2003 WI 150

(Also reported in 672 N.W.2d 275.)

For defendant-appellant-petitioner there were briefs by *Robert F. Klaver, Jr., James J. Carrig* and *Niebler, Pyzyk, Klaver & Wagner LLP,* Menomonee Falls, and oral argument by *James J. Carrig.*

For the plaintiff-respondent there was a brief by *Mark G. Blum* and *Hippenmeyer, Reilly, Moodie & Blum, S.C.,* Waukesha, and oral argument by *Mark G. Blum.*

¶ 1. ANN WALSH BRADLEY, J. In this action to collect unpaid personal property taxes, Wood-Land Contractors, Inc., (Wood-Land) seeks review of a court of appeals' decision that affirmed the circuit court's grant of summary judgment in favor of the Village of

Lannon (Lannon).[1] It contends that its equipment is tax exempt under Wis. Stat. § 70.111(20) (1999–2000).[2]

¶ 2. Specifically, Wood-Land argues that the court of appeals erred in applying the "primary purpose" of the business test rather than the use of the equipment test. We agree, and conclude that neither the language of the statute nor our prior cases supports the adoption of the "primary purpose" of the business test here. Rather, the use of the equipment test should be applied in determining whether this equipment is exempt from taxation. Accordingly, we reverse the court of appeals and remand to the circuit court.

## I

¶ 3. Wood-Land is a closely held family corporation headquartered in Lannon, Wisconsin. It contracts to cut and clear trees on the property of its customers. As part of its operations, Wood-Land removes all of the timber from the site and produces forest products, such as saw logs, wood chips, and firewood. Wood-Land advertises both its land clearing services and sale of firewood and wood chips to the general public.

¶ 4. Wood-Land owns approximately 1.3 million dollars in equipment. The most expensive item is a Timbco T-425 Feller Buncher machine. The Timbco's cost to Wood-Land was approximately $210,000, plus $127,000 for its specialized tractor and transport trailer. Wood-Land uses the Timbco to cut trees with girths up to 33 inches, which are generally of a height 80 feet or greater.

---

[1] *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI App 7, 259 Wis. 2d 879, 659 N.W.2d 95 (affirming a decision of the circuit court for Waukesha County, J. Mac Davis, Judge).

[2] All references are to the 1999–2000 version of the Wisconsin Statutes unless otherwise noted.

¶ 5.   For smaller trees, Wood-Land uses more conventional timbering machinery, including skidsters with grappling attachments, brush hogs, and chain saws. In addition to this type of equipment, Wood-Land also claimed an exemption for several of its office items including a typewriter, copier, telephones, calculators, and carpeting.

¶ 6.   After Wood-Land cuts a tree, it either chips it on-site or loads it onto log racks. Wood-Land cuts desirable trees to lengths as saw logs and sells them to mills. It processes less desirable trees for wood chips and firewood that it sells to the public. Wood-Land maintains an eight-acre property where it prepares and sells firewood and wood chips.

¶ 7.   In 2000, Wood-Land had a total revenue of $749,678.90. Of this total, $72,655.85 came from the sale of saw logs, wood chips, and firewood. Thus, Wood-Land's sale of "forest products" represented nearly ten percent of its revenue that year.

¶ 8.   Lannon commenced an action in May 2001 to collect unpaid personal property taxes on Wood-Land's equipment. Wood-Land brought a counterclaim seeking a declaratory judgment action with respect to its exemption rights under Wis. Stat. § 70.111(20). Both sides moved for summary judgment, and the circuit court concluded that the material facts were not in dispute.

¶ 9.   In its decision, the circuit court recognized that the commercial use of forest products was a "substantial purpose" of Wood-Land's operations. It further acknowledged that it was "beyond dispute that much of Wood-Land's equipment was used to 'cut trees,' to 'transport trees in logging areas,' or to 'clear land of trees.' " The court refused to grant the exemption, however, because Wood-Land's "primary purpose" was not to harvest forest products, but rather to clear land

for its customers. Accordingly, it granted judgment to Lannon based on the "primary purpose" of Wood-Land's business and never addressed the use of the office equipment or any other specific piece of equipment.

¶ 10.   The court of appeals affirmed the circuit court's decision. It acknowledged that "there are no prior cases in Wisconsin adopting the 'primary purpose' test." *Village of Lannon v. Wood-Land Contractors, Inc.,* 2003 WI App 7, ¶ 17, 259 Wis. 2d 879, 659 N.W.2d 95. Nevertheless, it concluded that it should adopt the test here. *Id.,* ¶ 16. The court reasoned:

> We are convinced that the legislature crafted a narrow exemption for the logging industry whose existence is based upon cutting forest products in logging areas or cutting and clearing land in forests so that it can use the fruits of its labor for some commercially viable use. The legislature did not intend to grant this exemption to businesses outside the logging industry.

*Id.*

¶ 11.   Applying the "primary purpose" of the business test, the court of appeals determined that Wood-Land did not qualify for the exemption. *Id.,* ¶ 17. It explained, "Any incidental value [Wood-Land] gets from commercially selling the felled trees it carries from developers' property is collateral to its main occupation. Wood-Land is not engaged in the systematic occupation of logging." *Id.,* ¶ 13.

II

■

¶ 12.   Our essential inquiry in this case is one of statutory interpretation. The interpretation of a statute presents a question of law subject to independent appellate review. *Meyer v. School Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

¶ 13.    When interpreting a statute, our purpose is to discern legislative intent. *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997). To this end, we look first to the language of the statute as the best indication of legislative intent. *Id.* Additionally, we may examine the statute's context and history. *Id.*

¶ 14.    Because exemption from the payment of taxes is an act of legislative grace, the party seeking the exemption bears the burden of proving entitlement. *Deutsches Land, Inc. v. City of Glendale,* 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999). Exemptions "shall be strictly construed . . . with a presumption that the property in question is taxable . . . ." Wis. Stat. § 70.109. In interpreting tax exemption statutes, we apply a "strict but reasonable construction." *Deutsches Land,* 225 Wis. 2d at 80.

III

¶ 15.    The issue in this case is whether the court of appeals erred in applying the "primary purpose" of the business test to Wis. Stat. § 70.111(20). We conclude that it did, as neither the language of the statute nor our prior cases supports the adoption of that test.

¶ 16.    Lannon maintains that Wood-Land is not entitled to the tax exemption under the subsection's plain language. It contends that the legislature incorporated a "use" component that specifically qualifies the exempt equipment "for the commercial use of forest products." According to Lannon, Wood-Land does not clear the land to sell and process the trees that it cuts;

164

rather, it clears the land for the development of property. As a result, Wood-Land's ancillary sales cannot transform its equipment into tax-exempt property.

¶ 17. The problem with Lannon's reading, as adopted by the court of appeals, is that it shifts the focus of the statute from the use of the equipment to the nature of the business seeking the exemption. We believe that such a reading runs contrary to legislative intent.

¶ 18. We begin our analysis with an examination of the statute. Wis. Stat. § 70.111 describes personal property that is exempted from general property taxation. It consists of 25 total subsections reflecting various public policy considerations made by the legislature. The statute provides in relevant part:

> The property described in this section is exempted from general property taxes:
>
> . . .
>
> (20) LOGGING EQUIPMENT. All equipment used to cut trees, to transport trees in logging areas or to clear land of trees for the commercial use of forest products.

¶ 19. Both parties agree that the phrase, "commercial use of forest products," modifies each of the three types of logging equipment specified in the statute. We too subscribe to this construction. To read the phrase as modifying only equipment used to clear land would render an exemption for nearly every saw in this state. Accordingly, we conclude that the legislature intended no such construction.

¶ 20. Where the parties disagree is whether the "primary purpose" of Wood-Land's business is a proper test for determining the tax exempt status of its equip-

ment. We believe it is not under Wis. Stat. § 70.111(20). On its face, the statutory exemption contains no language that the equipment be used by a certain business model or industry. Moreover, the exemption contains no language that the user's "primary purpose" is to harvest forest products.

¶ 21. We read the focus of the exemption to be solely on the use of the equipment. Thus, the relevant inquiry is whether the equipment is used: (1) to cut trees for the commercial use of forest products, (2) to transport trees in logging areas for the commercial use of forest products, or (3) to clear land of trees for the commercial use of forest products.

¶ 22. If the legislature had intended to narrow the exemption in the way that Lannon suggests, it could have easily done so. In looking at this exemption in the context of the whole statute, we note that several of the 24 other subsections in the statute contain examples of qualifying language. Such limiting language is not found in the exemption at hand.

¶ 23. For example, in the subsection entitled "TOOLS AND GARDEN MACHINES," the legislature chose to narrow the exemption to equipment "used in" or "used by" a particular business model or industry. Wis. Stat. § 70.111(9). Under it, "tools" are exempt if they are "kept and *used in* the mechanic's trade." *Id.* (Emphasis added.) Moreover, "garden machines," are exempt if they are "owned and *used by* any person in the business of farming or in the operation of any orchard or garden." *Id.* (Emphasis added.) The "used by" qualifier is also employed in Wis. Stat. §§ 70.111(14), 70.111(24), and 70.111(25).[3]

---

[3] Wisconsin Stat. § 70.111(14) entitled "MILKHOUSE EQUIPMENT" provides, "Milkhouse equipment used by a

166

¶ 24. The legislature adopted a variation of this language in the subsection entitled, "FARM MACHINERY AND EQUIPMENT." Wis. Stat. § 70.111(10). Below its definition of "Machine," the exemption specifies, "Tractors and machines; including accessories, attachments, fuel and repair parts for them; whether owned or leased, that are *used exclusively and directly* in farming . . . ." *Id.* (Emphasis added.)

¶ 25. Finally, the legislature provided yet another example of limiting language in the subsection entitled "CAMPING TRAILERS AND RECREATIONAL MOBILE HOMES." Wis. Stat. § 70.111(19)(b). It states, "Mobile homes, as defined in s. 66.0435, that are no larger than 400 square feet and that are *used primarily* as temporary living quarters for recreational, camping, travel or seasonal purposes." *Id.* (Emphasis added.)

¶ 26. Clearly the legislature has demonstrated an ability to use qualifying language which limits an exemption, as evidenced by these different subsections. Therefore, what Wis. Stat. § 70.111(20) does not say is also significant when interpreting its meaning.

¶ 27. We consider next the subsection's legislative history. Admittedly, the history of § 70.111(20) is silent on the policies underlying the exemption. Nevertheless, we find support for our interpretation.

¶ 28. We note that an earlier draft of the exemption, 1983 A.B. 38 states: "All equipment used to cut trees for lumber, to transport trees in logging areas or

farmer . . . ." Wisconsin Stat. § 70.111(24) entitled "MOTION PICTURE THEATER EQUIPMENT" provides, "Projection equipment, sound systems and projection screens that are owned and used by a motion picture theater." Wisconsin Stat. § 70.111(25) entitled "DIGITAL BROADCASTING EQUIPMENT" provides, "Digital broadcasting equipment owned and used by a radio station or a television station . . . ."

to clear land of trees *in lumbering.*" (Emphasis added.) The phrase "in lumbering" was removed in the later draft and replaced with the phrase "for the commercial use of forest products." We do not view the subsequent change as still referring exclusively to the lumbering or logging industry. Rather, we view the new language as removing the industry component from the subsection altogether.

¶ 29.  In sum, we find nothing in the exemption's language, context, or history to support Lannon's construction. To the contrary, such an examination reveals that the use of the equipment test is applied under Wis. Stat. § 70.111(20) when determining whether the equipment is exempt from taxation.

¶ 30.  A review of the relevant cases also supports our interpretation. The court of appeals acknowledged that, "there are no prior cases in Wisconsin adopting the 'primary purpose' test." *Wood-Land,* 259 Wis. 2d 879, ¶ 17. It found support, however, in the logic of *Village of Menomonee Falls v. Falls Rental World,* 135 Wis. 2d 393, 400 N.W.2d 478 (Ct. App. 1986). *Id.,* ¶¶ 15–16. The court also cited as foundation for its conclusion the "function or use" cases of *Ladish Malting Co. v. DOR,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980), and *DOR v. Greiling,* 112 Wis. 2d 602, 334 N.W.2d 118 (1983). *Id.,* ¶ 17.

¶ 31.  What the court of appeals failed to address, however, was its decision in *Owens-Illinois, Inc. v. Town of Bradley,* 132 Wis. 2d 310, 392 N.W.2d 104 (Ct. App. 1986). That case was decided after both *Ladish* and *Greiling* and rejected the application of the "primary purpose" test.

¶ 32.  In *Owens-Illinois,* the Wisconsin Department of Revenue advanced an argument very similar to Lannon's. It claimed that Owens-Illinois' boiler and

168

power house were not entitled to tax-exempt status because their "primary purpose" was to produce steam and heat for use in industrial production rather than to eliminate pollution. *Id.* at 315. The exemption in dispute was Wis. Stat. § 70.11(21)(a), "TREATMENT PLANT AND POLLUTION ABATEMENT EQUIPMENT." *Id.* It required two things: "(1) that all exempt property be purchased or constructed as a waste treatment facility; and (2) that exempt property be approved by the department of revenue for the purpose of abating or eliminating pollution." *Id.*

¶ 33. The court of appeals concluded that nowhere in the language of the exemption was there a requirement that "the primary purpose of a waste facility be pollution abatement in order to qualify for exemption." *Id.* Accordingly, it rejected the application of the "primary purpose" test. *Id.*

¶ 34. We find *Owens-Illinois* instructive in the present case. As with Wis. Stat. § 70.111(20), the exemption in *Owens-Illinois* focused on the use of equipment and not the "primary purpose" of its user. As a result, the court of appeals determined that Owens-Illinois' motivation or purpose for using the equipment was irrelevant in evaluating the exemption claim. *See id.* at 315–316. We believe that Wood-Land's motivation or purpose for using its logging equipment is similarly irrelevant here. All the subsection requires is that the equipment be "used to cut trees, to transport trees in logging areas or to clear land of trees for the commercial use of forest products." Wis. Stat. § 70.111(20).

¶ 35. In adopting the "primary purpose" of the business test, the court of appeals relied on the logic of *Falls Rental World. Wood-Land,* 259 Wis. 2d 879, ¶¶ 15–16. The sole issue on appeal in that case was whether goods held out for rent could be classified as

169

"merchants' stock-in-trade," thereby qualifying it as tax exempt under § 70.111(17). *Falls Rental World,* 135 Wis. 2d at 395. Falls Rental World based its claim on the fact that it occasionally removed property from its rental group and sold it. *Id.* The court concluded that the property at issue was not "stock-in-trade" under the plain meaning of the statute. *Id.*

¶ 36. The court of appeals' reliance on *Falls Rental World* is misplaced. Nothing about that decision supports the adoption of the "primary purpose" of the business test in the present case. Indeed, the focus of *Falls Rental World* was the property held out for rent. *Id.* To the extent that the court examined the nature of the business, it did so only to give meaning to the entity described in the statute, that is, "merchant." *Id.* at 398. Here, the subsection at issue contains no corresponding business entity. It is a different exemption with a focus on the use of equipment.

¶ 37. Likewise, we believe neither *Ladish* nor *Greiling* supports the adoption of the "primary purpose" test here. In *Ladish,* a malting company contended that its attemporators, kilns, and malt elevators were exempt under the so-called "M&E" exemption. 98 Wis. 2d at 498. The "M&E" exemption applied to "[m]anufacturing machinery and specific processing equipment, exclusively and directly used by a manufacturer in manufacturing tangible personal property." *Id.* It excluded, however, "materials, supplies, buildings or building components." *Id.* The department of revenue argued that Ladish was not entitled to the exemption because its structures were not "machines" but rather "buildings." *Id.* at 499. The court of appeals disagreed, applying the "function or use" test over the more narrow "physical appearance" test. *Id.* at 510.

¶ 38. In *Greiling,* this court faced a similar issue involving a greenhouse. A taxpayer claimed that his greenhouse was a "machine" used in floriculture, thereby qualifying its components for an exemption. 112 Wis. 2d at 605. The court agreed, noting that, "a greenhouse such as the one in this case does not function simply as a shelter or storage area for plants. Instead, it actively produces the artificial environment necessary to produce plants for commercial use and as such could be considered a machine." *Id.* at 606. The court cited *Ladish* and stated, "We believe that the ['function or use'] test should be determinative when resolving use tax exemption issues." *Id.* at 607.

¶ 39. We fail to see how either *Ladish* or *Greiling* provides foundation for the court of appeals' decision in the present case. The issue in both cases was whether a disputed structure or structures could be considered "machines" for the purposes of tax exemption. Accordingly, the court's focus was on the "function or use" of the property, not the "primary purpose" of the business or taxpayer claiming the exemption.

¶ 40. In sum, we do not find support in our prior case law for the application of the "primary purpose" of the business test here. To the contrary, the case of *Owens-Illinois,* in interpreting a similar exemption, rejected such an approach.

¶ 41. In addition to the above discussion of the statutory language and our prior case law, we note the difficulty in the practical application of the "primary purpose" test. Because the test is subjective in nature, it places an enormous burden on assessors or courts applying the exemption. First, they must ascertain whose "purpose" they are to consider. In a case involving two companies—one logging and one processing—this could be a troublesome task. Second, they must deter-

171

mine the individual business' "primary purpose" for each taxable year. We can imagine scenarios in which fluctuating markets could alter Wood-Land's percentage of forest products sales and transform otherwise non-exempt equipment into exempt equipment. We conclude the legislature did not intend such a result.

■

¶ 42.   Having established that § 70.111(20) requires a use of the equipment test, we consider next the application of that test in this case. In its decision, the circuit court recognized that "much" of Wood-Land's equipment met the requirements of the statute. Nevertheless, it applied the "primary purpose" test and rejected the claimed tax exemption because it determined that Wood-Land's "primary purpose" was clearing land for its customers. Accordingly, the circuit court granted summary judgment without addressing which pieces of equipment met the statutory use requirements.

¶ 43.   On remand, the circuit court should consider what equipment of Wood-Land's is used: (1) to cut trees for the commercial use of forest products, (2) to transport trees in logging areas for the commercial use of forest products, or (3) to clear land of trees for the commercial use of forest products. Wood-Land will bear the burden of proving entitlement to the exemption. *Deutsches Land,* 225 Wis. 2d at 80.

¶ 44.   At oral argument, both parties advanced a "strict but reasonable" standard for applying tax exempt statutes. They relied upon *Deutsches Land* in support of this standard.

¶ 45.   In *Deutsches Land,* we considered whether property owned by benevolent associations devoted to the preservation of German culture was entitled to exemption from property taxes under § 70.11

(1995–96). *Id.* at 76. In construing the statute, we rejected the notion that the term "exclusively" brooked no exceptions. *Id.* We explained that such an inflexible and strict interpretation would frustrate the intent of the statute. *Id.* at 83. In essence, we recognized that "inconsequential or incidental uses of the property for gain" by a benevolent organization did not destroy an exemption calling for "exclusive" use. *See id.* at 83.

■

¶ 46. Although *Deutsches Land* involved the exemption of real property, we nevertheless find it useful in the present case. The personal property exemption at issue is subject to the same "strict but reasonable" construction. *See id.* at 80. Without such a construction, we believe that the exemption would invite subterfuge or sham in claims involving de minimis use. Accordingly, we recognize the corollary to the above principle here: de minimis uses of the property are not sufficient to invoke this exemption.

¶ 47. We are mindful that our holding today may appear to run contrary to the legislative directive that exemptions "shall be strictly construed . . . with a presumption that the property in question is taxable . . . ." Wis. Stat. § 70.109. However, we are impelled to our conclusion by the language of the statute. We believe that if the legislature intended to limit Wis. Stat. § 70.111(20) to the logging industry, it would have explicitly said so, as it has done in several of the other subsections. Indeed, if the legislature still wishes to narrow the exemption, it can amend it at any time by adding a few words to identify a specific business model or, if it so chooses, a "primary purpose."

¶ 48. In sum, we determine that the court of appeals erred in adopting the "primary purpose" of the business test. We agree with Wood-Land that

§ 70.111(20) is defined by the use of the equipment. Accordingly, we reverse the court of appeals and remand to the circuit court to determine what equipment is entitled to a tax exemption under the statutory provision.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 49. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with Judge Nettesheim's dissent that summary judgment is not appropriate in the present case. I, like Judge Nettesheim, agree with the test set forth by the court of appeals. He and I conclude that competing reasonable inferences can be drawn on the question of whether Wood-Land's primary business activity is logging or whether it is the clearing of land with timbering as an ancillary activity. Like Judge Nettesheim, I would remand the cause to the circuit court for trial on that question.

¶ 50. Wisconsin Stat. § 70.111 provides a conglomeration of numerous tax exemptions. The statute does not set forth a seamless web of tax exemptions.[1] The exemptions do not divulge a pattern or theme. Subsection (20) of § 70.111 provides a personal property tax exemption for "[a]ll equipment used to cut trees, to

___

[1] As the court explained in *Columbus Park Housing Corp. v. City of Kenosha,* 2003 WI 143, ¶ 35, 267 Wis. 2d 59, 671 N.W.2d 633, chapter 70 "is not a comprehensive, perfectly woven web of tax exemptions . . . rather it represents a conglomeration of exemptions granted to specific and well-delineated entities and property used in a certain fashion." The majority opinion's or the concurring opinion's comparison of this exemption with other statutory exemptions and other tax cases is not persuasive.

transport trees in logging areas or to clear land of trees for the commercial use of forest products."[2]

¶ 51. The statutory language to be interpreted in the present case is the phrase "for the commercial use of forest products." The phrase "for the commercial use of forest products" modifies each of the three uses of equipment specified in the statute: cutting trees, transporting trees in logging areas, and clearing land of trees.[3] Wood-Land focuses on the phrase "to clear land of trees for the commercial use of forest products."

¶ 52. The sole issue before the court is whether "for the commercial use of forest products" means that the primary business purpose of the entity claiming the exemption is cutting, transporting or clearing land of trees for the commercial use of forest products or whether, as the majority opinion puts it, the entity merely utilizes its equipment for some commercial use of forest products.[4]

¶ 53. That the statute requires equipment to be used for *the* commercial use of forest products rather than *a* commercial use of forest products suggests that the first, highest, or foremost purpose of the business using the equipment, or of the use of the equipment itself, is for the commercial use of forest products.[5] Use of the definite article in the statute rather than the

---

[2] *See* Wis. Stat. § 70.111(20).

[3] Majority op., ¶ 19.

[4] The court of appeals concluded that "the statute was designed to give an exemption for those systematically involved in the logging business, not to those who incidentally cut logs and sell the products as a small part of an altogether different kind of business." *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI App 7, ¶ 1, 259 Wis. 2d 879, 659 N.W.2d 95.

[5] *See Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581 (N.Y. 2000).

indefinite article, coupled with the various references to "logging" in both the title and body of the statute, and general rules of interpreting tax exemptions lead me to believe that the legislature sought to craft a very narrow exemption limiting the business entities capable of claiming an exemption to those that are part of the logging industry.

¶ 54. The court of appeals read the title of the statute, which refers to "logging equipment,"[6] along with the text, including the provision referring to the transport of trees in logging areas, and concluded that the legislature intended that the exemption apply to entities involved in the logging industry.[7] The court of appeals concluded on review of a summary judgment that the primary purpose of Wood-Land was to clear the land for development, not to make commercial use of forest products.[8] The dissent in the court of appeals agreed with the test expressed by the majority but concluded that the summary judgment record supported competing inferences drawn by both parties as to whether Wood-Land is engaged in the logging business and urged that the matter should go to trial.[9]

¶ 55. I agree with the court of appeals that the legislature crafted a narrow exemption for those in the

---

[6] The title of a statute may be persuasive of the interpretation to be given the statute and legislative intent. *Mireles v. LIRC,* 2000 WI 96, ¶ 60 n.13, 237 Wis. 2d 69, 613 N.W.2d 875 (quoting *Pure Milk Prods. Coop. v. Nat'l Farmers Org.,* 64 Wis. 2d 241, 253, 219 N.W.2d 564 (1974)).

[7] *Wood-Land,* 259 Wis. 2d 879, ¶¶ 13, 16.

[8] The income Wood-Land derived from the sale of forest products in the present case was less than 10% of its business revenue.

[9] *Wood-Land,* 259 Wis. 2d 879, ¶ 20 (Nettesheim, J., concurring).

business of clearing forest land for the express purpose of using the fruits of their labor for eventual commercial use. The legislature did not intend to grant the exemption to businesses outside the logging industry. The question for me, then, is whether Wood-Land is engaged in the systematic business of logging and using this equipment in that business.

¶ 56. The majority opinion rejects this approach,[10] concluding that the statute need not consider Wood-Land's motivation or purposes for using its logging equipment and looks only to determine whether the use of the equipment is for a commercial use of forest products.[11]

¶ 57. The majority opinion states it is adopting a "use of equipment test" but never explains the test. It remands the matter to the circuit court to decide the exemption but merely reiterates the words of the statute in instructing the circuit court on remand. According to the majority opinion, on remand the circuit court should consider "what equipment of Wood-Land's is used: (1) to cut trees for the commercial use of forest products, (2) to transport trees in logging areas for the commercial use of forest products, or (3) to clear land of trees for the commercial use of forest products."[12]

¶ 58. The only guidance the majority opinion gives to the circuit court in applying the statute on remand is that sham claims involving de minimis use of

[10] Majority op., ¶ 34.

[11] The tax cases the majority opinion relies on and distinguishes do not interpret the tax exemption in the present case. All the cases the majority opinion cites, including *Owens-Illinois, Inc. v. Town of Bradley*, 132 Wis. 2d 310, 392 N.W.2d 104 (Ct. App. 1986), which reject a "primary purpose" test, relate to different exemptions with different focuses.

[12] Majority op., ¶ 43.

equipment for commercial use of forest products are not sufficient to sustain an exemption. The majority opinion thus interprets the statute to exclude from the exemption inconsequential uses of the designated equipment for the commercial use of forest products.[13]

¶ 59. In doing so, the majority opinion injects a quantity element into § 70.111(20) at the same time as it objects to the court of appeals' insertion of a quantity element into the statute. The majority opinion carefully avoids commenting on how de minimis is de minimis and how equipment used for dual purposes should be treated.[14] Indeed, this case may very well present a case in which much of Wood-Land's equipment is used for dual purposes. If one of the majority's criticisms is that the court of appeals decision is difficult to apply, the same criticism can be levied against the majority opinion's interpretation.

¶ 60. Perhaps the tests set forth in the majority opinion and in the decision of the court of appeals are distinctions without a difference. Regardless of whether courts are required to determine whether an entity is a logging enterprise and has as its primary business purpose cutting, transporting, or clearing land of trees for the commercial use of forest products, or whether courts must evaluate whether the equipment is used solely, partly, or de minimis for a commercial use of forest products, the tests ultimately require a determination of how much use must be for commercial use of forest products in order to qualify for a tax exemption.

---

[13] Majority op., ¶¶ 45–46.

[14] Wood-Land's equipment is, at best, used for a dual purpose: to clear land at the request of persons who hire it and to obtain forest products for commercial use. Brief and Appendix of Defendant-Appellant-Petitioner Wood-Land Contractors, Inc., at 22.

¶ 61. Having concluded that both tests introduce a quantity element into the statutory language, I am not persuaded that the "use" interpretation adopted by the majority opinion is any better than the "primary purpose" interpretation adopted by the court of appeals. Indeed I think the majority opinion may be more difficult to apply.

¶ 62. To determine under the "primary purpose" test whether a business entity is in the logging industry will require consideration of several factors. These factors include, but are not limited to, whether an entity holds itself out as being a logging business and the amount or percentage of revenue generated from the entity's cutting trees, transporting trees in logging areas, and clearing of land for commercial use of forest products.

¶ 63. The majority opinion acknowledges that its holding "may appear to run contrary to the legislative directive."[15] In light of the legislature's explicit command in Wis. Stat. § 70.109 that exemptions "shall be strictly construed . . . with a presumption that the property in question is taxable,"[16] and our interpretive rule that tax exemption statutes be given a strict but reasonable interpretation,[17] I conclude that the majority opinion is contrary to the legislature's intent and our interpretive rule.

¶ 64. The burden is on the taxpayer to show that its construction is supported by clear evidence of legislative intent; "any doubt under the 'strict but reasonable' construction rule must be resolved against the

---

[15] Majority op., ¶ 47.

[16] *See* Wis. Stat. § 70.109.

[17] *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999).

179

party seeking the exemption."[18] The court of appeals' interpretation of § 70.111(20) to include a "primary purpose" of the business test more accurately effectuates the language of the statute and the intent of the legislature than does the majority opinion's. Accordingly, I concur and would, for the reasons set forth by Judge Nettesheim, remand the cause to the circuit court for trial.

¶ 65. DAVID T. PROSSER, J. (*concurring*). I join the majority opinion with reservation because of the statutory directive that property tax exemptions "shall be strictly construed in every instance." Wis. Stat. § 70.109. This directive, which was inserted into the statutes in 1998, is even more pointed than the modern formulation of the strict construction rule. *See Sisters of St. Mary v. City of Madison,* 89 Wis. 2d 372, 379, 278 N.W.2d 814 (1979); *Friendship Village of Greater Milwaukee, Inc. v. City of Milwaukee,* 181 Wis. 2d 207, 220, 511 N.W.2d 345 (Ct. App. 1993).

¶ 66. The concurrence of the Chief Justice asserts that the majority opinion never explains the "use of equipment" test. Concurrence, ¶ 57. There is some legitimacy in this criticism. In the wake of the court's decision, a property owner may be able to secure a property tax exemption for certain equipment merely by demonstrating that the equipment is used to cut trees for the commercial use of forest products, to transport trees for the commercial use of forest products, or to clear land for the commercial use of forest products, so long as use of the equipment for one or more of these purposes is not de minimis. This *may* be a broader exemption than the legislature intended.

---

[18] *Deutsches Land,* 225 Wis. 2d at 80–81.

¶ 67. On the other hand, the problem with the "primary use" test is that it could nullify the exemption on logging equipment under Wis. Stat. § 70.111(20) if *less* than 50 percent of the income generated by the equipment in the previous year came from cutting trees for the commercial use of forest products, transporting trees for the commercial use of forest products, or clearing land for the commercial use of forest products. As a result, the viability of a taxpayer's exemption could depend upon the fluctuating market value of forest products or the varying and unpredictable utilization of logging equipment as new work becomes available.

¶ 68. Wisconsin Stat. § 70.111 contains multiple exemptions for personal property, including horses,[1] tools and garden machines,[2] and rented personal property.[3] Wisconsin Stat. § 70.112(5) contains an exemption for motor trucks, truck tractors, similar motor vehicles, and trailers used in connection with these vehicles. These exemptions overlap the exemption for logging equipment, regardless of how the exemption for logging equipment is construed.

¶ 69. Thus, even if the court of appeals' interpretation of § 70.111(20) were affirmed, a person who used a horse or motor truck to clear land for development would have a property tax exemption for the horse or truck, irrespective of whether any affected forest products had commercial value. Similarly, "logging equipment" for rental would normally be exempt for the rental business, no matter how the equipment was used. This would produce an inexplicable patchwork of

---

[1] Wis. Stat. § 70.111(7).

[2] Wis. Stat. § 70.111(9).

[3] Wis. Stat. § 70.111(22).

exemptions for identical "logging equipment," with potentially inequitable consequences.

¶ 70.   Against this background, I conclude that the majority opinion represents the proper interpretation of the exemption. The legislature is entitled to clarify its intent.

¶ 71. PATIENCE D. ROGGENSACK, J. (*concurring*).   I agree with the conclusions reached in the majority opinion. However, I write separately to point out that the majority opinion's statutory analysis of Wis. Stat. § 70.111(20) is a departure from that which has been this court's mode of statutory analysis and that it is not one that the court has discussed and decided to adopt.

¶ 72.   Our jurisprudence has repeatedly explained that the interpretation of a statute is a question of law that we review de novo. *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997); *Stockbridge Sch. Dist. v. DPI,* 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). Our goal in statutory interpretation is to ascertain and give effect to the legislature's intent. *Angela M.W.,* 209 Wis. 2d at 121; *Ball v. Dist. No. 4, Area Bd. of Vocational, Technical and Adult Educ.,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984). We begin our interpretation with the language the legislature has chosen to use in the statute. *Angela M.W.,* 209 Wis. 2d at 121. We give that language its plain and ordinary meaning. *Id.* at 121; *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. If the language is clear on its face, we need go no further and we simply apply it. *Bruno,* 260 Wis. 2d 633, ¶ 20. As a general rule, we do not review extrinsic sources unless there is an ambiguity in the statute. However, if the language is ambiguous, we consult the "scope, history,

context, subject matter and object of the statute" in order to ascertain legislative intent. *Ball,* 117 Wis. 2d at 537–38. A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Angela M.W.,* 209 Wis. 2d at 121.

¶ 73. The majority opinion employs the analytic framework for a statute that is ambiguous, while purposely not analyzing whether Wis. Stat. § 70.111(20) is ambiguous. This is a change in our traditional analysis, which is set out above. I offer no opinion about whether our mode of statutory analysis ought to be changed. However, when we change the statutory analysis in a majority opinion without explaining that the majority of the court has not decided to change its analysis, we lead our readers to conclude that we have changed. This can cause confusion among those we write to assist and make our opinions less useful to the public. Accordingly, I respectfully concur.

¶ 74. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this concurrence.