STATE of Wisconsin, Plaintiff-Respondent,

v.

Miyosha K. WHITE, Defendant-Appellant.

Court of Appeals

*No. 04–1211–CR. Submitted on briefs November 1, 2004.—Decided November 16, 2004.*

2004 WI App 237

(Also reported in 690 N.W.2d 880.)

† Petition for review denied 1-11-2005.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Len Kachinsky* of *Sisson & Kachinsky Law Offices*, Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Lara M. Herman*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Miyosha White appeals a judgment of conviction for two counts of delivery of cocaine as party to a crime and an order creating a two-year waiting period before he is eligible for the Earned Release Program (ERP). White argues that the trial court erroneously exercised its discretion when it imposed the waiting period because the court had the statutory authority to determine *whether* White was eligible for ERP, but not *when* he could become eligible. White argues more specifically that *State v. Lehman*, 2004 WI App 59, 270 Wis. 2d 695, 677 N.W.2d 644, *rev. denied*, 2004 WI 50, 271 Wis. 2d 111, 679 N.W.2d 546, is either not controlling in his case or was decided wrongly and, therefore, presents a question that should be certified to the supreme court.

¶ 2.   Based on standard canons of statutory construction, we conclude that Wis. Stat. § 973.01(3g),[1] the ERP provision, and Wis. Stat. § 973.01(3m), the provision *Lehman* construed, are related by language, subject matter and function within the Truth-in-Sentencing law. Given that relation, we also conclude that *Lehman* requires us to determine that trial courts

---

[1] The ERP provision was added to Wis. Stat. § 973.01 by 2003 Wis. Act 33 § 2749; it became effective on July 25, 2003. All other references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

have the authority both to decide whether defendants are ERP eligible and to determine when the period of eligibility will begin. We therefore affirm the judgment and order.

## Background

¶ 3.   In August 2003, White was arrested and charged with two counts of delivery of cocaine as a party to crime. Less than a month before White's arrest, an informant known as "Q" approached the Door/Kewaunee County Drug Task Force with information that he could buy an "eight ball"—an eighth of an ounce of cocaine—from a man named Miyosha. Police officers helped manage and monitor that purchase. Several days later, "Q" arranged another buy, this time of two "eight balls." In both cases, White was identified by the police as the driver of the car that showed up at the purchase sites and by "Q" as one of the parties who delivered the drugs.

¶ 4.   On November 26, 2003, the trial court accepted White's no contest pleas to two counts of delivery of cocaine as a party to a crime and found him guilty. At a later hearing, the court sentenced White to eighteen months' initial confinement and eighteen months' extended supervision on the first count of delivering one "eight ball" of cocaine. On the second count, White was sentenced to three years' initial confinement and four years' extended supervision, concurrent with the first sentence. The court declined to order White eligible for the Challenge Incarceration Program (CIP), popularly known as bootcamp, but did make him eligible for the Earned Release Program (ERP). The court added, how-

ever, that White would not become eligible for ERP until he had completed two years' initial confinement.[2]

¶ 5.   White filed a postconviction motion challenging the court's authority to impose a waiting period for ERP. The trial court decided that *Lehman* was binding precedent and denied White's motion. White now appeals.

## Discussion

¶ 6.   Whether Wis. Stat. § 973.01(3g) authorizes the trial court both to determine eligibility for ERP and to decide when eligibility will begin is a question of law this court would ordinarily review de novo. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996). To give effect to the legislature's intent, we would look to the plain language of the statute. *State v. Corey J.G.*, 215 Wis. 2d 395, 411–12, 572 N.W.2d 845 (1998). If the statute's language was not clear on its face, we would consult the "scope, history, context, subject matter and object of the statute" to discover the legislative intent. *See Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 652, 539 N.W.2d 98 (1995) ("The language of a statute is ambiguous if reasonably well informed individuals could differ about its meaning"); *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, ¶ 72, 267 Wis. 2d 158, 672 N.W.2d 275.

¶ 7.   Here, however, we must first determine whether interpretation of Wis. Stat. § 973.01(3g), the

---

[2] According to the trial court, it exercised its discretion in this way because it believed White was dealing drugs to make money, had turned his back on opportunities he had made for himself after leaving prison and was a threat to the community despite his "good intentions."

ERP statute, is governed by *Lehman*, a decision of this court interpreting the nearly identical language of WIS. STAT. § 973.01(3m), the CIP statute. If *Lehman* controls the interpretation of both parts of § 973.01, we are constrained by our prior decision; this court does not have the power to overrule, modify, or withdraw any language from that opinion. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). Despite its division into districts, the court of appeals functions as a unitary court and must speak with one voice. *In re Court of Appeals*, 82 Wis. 2d 369, 371, 263 N.W.2d 149 (1978). Even if we were to disagree with *Lehman*, we would thus be limited to signaling our disfavor rather than correcting any perceived error. *Cook*, 208 Wis. 2d at 190.

¶ 8.   In *Lehman*, we were asked to decide whether the trial court had the statutory authority to impose a waiting period before a defendant became eligible for CIP. We concluded that the language of WIS. STAT. § 973.01(3m) was ambiguous, *see Lehman*, 270 Wis. 2d 695, ¶ 11, because the provision, quoted in full below, was open to at least two incompatible yet reasonable interpretations:

> CHALLENGE INCARCERATION PROGRAM ELIGIBILITY. When imposing a bifurcated sentence under this section on a person convicted of a crime . . . the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible for the challenge incarceration program . . . during the term of confinement in prison portion of the bifurcated sentence.

WIS. STAT. § 973.01(3m). We said defendant's argument, that the statute gave the trial court the authority only to decide whether felons were eligible for CIP, was reasonable. *Lehman*, 270 Wis. 2d 695, ¶ 9. However, we also determined the state's argument, that references to

585

discretion and term of confinement meant courts could determine when offenders became eligible, was reasonable as well. *Id.*, ¶ 10. Having found ambiguity in the statute, we sought the intent of the legislature in the history of the Truth-in-Sentencing law. *Id.*, ¶¶ 11, 14–16. We finally determined that the legislative history revealed an intent to give greater discretion to judges imposing bifurcated sentences, an intention that was advanced by the state's broad interpretation of the CIP statute. *Id.*, ¶ 17.

¶ 9. The question now before us is whether our reasoning in *Lehman* also controls the interpretation of the almost identical ERP statute, WIS. STAT. § 973.01(3g):

> EARNED RELEASE PROGRAM ELIGIBILITY. When imposing a bifurcated sentence under this section on a person convicted of a crime . . . the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to participate in the earned release program . . . during the term of confinement in prison portion of the bifurcated sentence.

White argues that the trial court erroneously exercised its discretion when it treated *Lehman* as binding precedent, arguing that the language of the ERP statute is plain and unambiguous. White further argues that the relationship between the ERP statute and WIS. STAT. § 302.05(3),[3] which sets out eligibility criteria for ERP, makes it clear that the trial court's discretion extends only to granting or withholding eligibility from offenders who meet the statutory criteria. White thus essentially argues that we can avoid applying *Lehman* by

---

[3] This provision was also added by 2003 Wis. Act 33 § 2505, and also went into effect on July 25, 2003.

concluding that nearly identical words, phrases and sentence structures, located in adjacent statutory provisions, can be read independently. We disagree.

¶ 10.  As we have said elsewhere, in the absence of contrary evidence, language used in related statutes is intended to have the same meaning. *See State v. Kirch*, 222 Wis. 2d 598, 604–05, 587 N.W.2d 919 (Ct. App 1998). The supreme court has held that the language of one subsection of a statute should be construed in a way that makes it consistent with other subsections of the same statute. *See State v. Williams*, 198 Wis. 2d 479, 491, 544 N.W.2d 400 (1996). Finally, case law has long recognized that all parts of a statute should be construed to support the statute's overall purpose. *See, e.g., Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969). To the extent that the CIP and ERP provisions are linked by nearly identical language, similar subject matter and parallel function in the Truth-in-Sentencing scheme, they are related statutes whose meaning must be harmonized. *Lehman*'s interpretation of the CIP provision and the overall purpose of the statute thus govern our construction of the ERP statute.

¶ 11.  White argues in the alternative and rather more directly that *Lehman* was wrongly decided and we should certify his appeal to the supreme court to rectify that error. White contends that *Lehman* ignored prior case law that "clearly indicated that a court's sentencing powers derived solely from clear grants of authority by the legislature." According to White, *Lehman*'s construction of the CIP statute thus usurped an area of decision-making that the legislature has delegated to the executive. We are not persuaded.

¶ 12.   Many of the points White raises were addressed in *Lehman*.[4] We recognize that reasonable minds might disagree over whether the contested language in WIS. STAT. § 973.01(3m) and (3g) is ambiguous, but this court has already spoken on the issue. If White wishes to challenge that determination, he must address his argument to the only court with the power to modify or overrule *Lehman*, the supreme court.

*By the Court.*—Judgment and order affirmed.

---

[4] The supreme court denied Lehman's petition for review in that case. *See infra,* ¶ 2.