LUNDSTEN, P.J.
*112 ¶ 1 Christopher Mason appeals a judgment convicting him of identity theft under *113 WIS. STAT. § 943.201,[1] as that crime is applied to the use of another's credit or debit card without authorization. Mason argues that the trial evidence was insufficient with *79 respect to the "representing" element of identity theft, that is, that Mason represented that he was the cardholder or that he was acting with the authorization of the cardholder.
¶ 2 Although Mason argues insufficiency of the trial evidence, he is not asking us to compare the evidence against elements of a crime with undisputed meaning. Rather, Mason's insufficiency-of-the-evidence argument turns on the proper interpretation of the "representing" element of WIS. STAT. § 943.201. The resolution of this statutory interpretation issue dictates whether the evidence was sufficient to support Mason's conviction.
¶ 3 More specifically, Mason argues that the "representing" element of identity theft must mean something more than the mere presentation of a document because, if it means no more than this, the "representing" element adds nothing to that crime's use-of-the-document element and, thus, renders the "representing" element surplusage. It follows, according to Mason, that, because the trial evidence showed only that he presented a credit card and a debit card for payment, the State failed to present sufficient evidence on the "representing" element.
¶ 4 We conclude that State v. Stewart , 2018 WI App 41, 383 Wis. 2d 546, 916 N.W.2d 188, controls here. Although Stewart does not address the surplusage argument that Mason makes, Stewart nonetheless *114 holds that the "representing" element in a companion identity theft statute requires nothing more than presenting a document under circumstances in which such presentation is an effective representation that the document is being used with authorization. We further explain that, even if Stewart did not control here, we would reject Mason's surplusage argument.
Background
¶ 5 The State presented evidence at trial of 15 crimes. The evidence supported the view that Mason:
• burglarized a home, during which he stole a debit card, a credit card, and jewelry-Count 1, charging burglary under WIS. STAT. § 943.10(1m)(a) ;
• repeatedly used the debit and credit cards to obtain goods and services-Counts 2 to 13, charging identity theft under WIS. STAT. § 943.201(2)(a) ; and
• transferred the stolen jewelry to a jewelry store-Count 16, charging theft under WIS. STAT. § 943.20(1)(a).
The jury found Mason guilty of Counts 2 and 3 (identity theft) and Count 16 (theft). In this appeal, Mason challenges only his two identity theft counts.[2]
¶ 6 As pertinent to Count 2, the evidence showed that Mason used a debit card, that he knew was not his and that he was not authorized to use, to *115 obtain gasoline at a Mobil gas station. Video presented to the jury showed Mason pumping gasoline at the station, and other evidence showed that a debit card stolen in the burglary *80 was used to purchase the gasoline at the same time. With respect to "use" and "representing," there was no evidence that Mason did anything other than insert the debit card into a gasoline pump.
¶ 7 As pertinent to Count 3, the evidence showed that Mason used a credit card, that he knew was not his and that he was not authorized to use, to obtain food at a Burger King restaurant. Video presented to the jury showed Mason driving up to a pay-window and then driving up to a pick-up window to get the food. Other evidence showed that a credit card stolen in the burglary was used to make the Burger King purchase at the time the video shows Mason going through the Burger King drive through. As to the purchase, there was no evidence that Mason did anything other than present the credit card to a Burger King employee.
¶ 8 After the close of evidence, Mason moved to dismiss all of the identity theft charges for the same reason Mason argues on appeal that the evidence was insufficient. That is, before the circuit court Mason argued that the fourth "representing" element of identity theft requires proof of something more than mere presentation of a card as payment. The circuit court disagreed and denied the motion to dismiss the charges.
*116 Discussion
¶ 9 Mason argues that, as to the two charged counts of identity theft, the trial evidence was insufficient to satisfy all of the elements of that crime. As noted, the resolution of this insufficient evidence argument does not hinge on comparing the evidence to the undisputed meaning of the elements of a crime. Rather, Mason's insufficient evidence argument pivots on his statutory interpretation argument. According to Mason, if the fourth "representing" element of the identity theft crime is properly interpreted to mean something more than the mere presentation of a financial transaction card for payment, then the evidence at trial was insufficient because, in that respect, the State did nothing more than prove that Mason presented debit and credit cards as payment.
¶ 10 Before explaining Mason's argument more fully, we set the scene by briefly reciting statutory interpretation principles, the pertinent trial evidence, and the elements of the identity theft crime as it applies to the unauthorized use of a financial transaction card.
¶ 11 The general rules of statutory interpretation were set forth in State ex rel. Kalal v. Circuit Court for Dane County , 2004 WI 58, 271 Wis.2d 633, 681 N.W.2d 110 :
[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.
... [S]tatutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted *117 meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.
Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage. "If this process of analysis yields a plain, clear statutory meaning, then *81 there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute."
Id. , ¶¶ 44-46 (citations omitted).
¶ 12 Turning to the relevant trial evidence, the State presented evidence showing that Mason used a debit card to obtain gasoline at one location and used a credit card to obtain food at another location, both times without the consent of the cardholder. There was no evidence that Mason did anything more than present the cards as payment for the gas and food. In other words, Mason did not state that he was the cardholder or, beyond presenting the card for payment, otherwise affirmatively represent that he was the cardholder.
¶ 13 The jury convicted Mason of two counts of identity theft under WIS. STAT. § 943.201(2)(a). In keeping with the standard jury instruction, the jury was *118 told that Mason was guilty if the State proved that Mason did each of the following:
First, used the debit/credit card of a person who was not Mason.
Second, used the debit/credit card to obtain something of value.
Third, acted without the authorization or consent of the cardholder while knowing that he did not have authorization or consent.
Fourth, represented that he was the debit/credit cardholder or that he was acting with the authorization or consent of the holder.
See § 943.201(2)(a) ; see also WIS JI- CRIMINAL 1458 (2004) and State v. Ramirez , 2001 WI App 158, ¶ 10, 246 Wis.2d 802, 633 N.W.2d 656.[3] Before the jury, the State argued that presenting the debit and credit cards as payment satisfied both "use" components of the first and second *82 elements and the fourth "representing" element.
¶ 14 Mason argues that the trial evidence was insufficient to support a finding on the fourth element, the element requiring proof that Mason "represented" that he was the cardholder or an authorized user. His specific argument proceeds as follows:
• The evidence showing that he presented the cards satisfies the "use" components of the first and *119 second elements. That is, that his acts of presenting another person's financial cards for payment constituted his "use" of the cards within the meaning of those elements.
• Because there is no evidence that Mason did anything more than present the cards as payment, the evidence satisfying the "use" requirement is the same evidence that satisfied the fourth element-the element requiring proof that Mason "represented" that he was the cardholder or that he was acting with the authorization or consent of the cardholder.
• The fourth element must mean something different from the "use" components of the first and second elements. Otherwise, the fourth element is surplusage.
• An often-repeated tenet of statutory construction, exemplified by State v. Dowdy , 2012 WI 12, ¶ 31, 338 Wis.2d 565, 808 N.W.2d 691, states that statutes should be read to avoid surplusage.
• It follows that the fourth element must require something more than the mere presentation of a financial card.
• Mason gives examples of the "something more," such as forging the signature of the cardholder or verbally stating that one is the cardholder, but does not provide a general definition of the fourth element.
We reject Mason's argument for the reasons that follow.
¶ 15 As noted, we conclude that our recent Stewart decision requires rejection of Mason's argument.
¶ 16 In Stewart , we held that merely presenting a document can satisfy the "representing" element of *120 Wisconsin's other identity theft statute, WIS. STAT. § 943.203, in circumstances where the act of presenting a document implied that the presenter has the entity's authorization to use that information. See Stewart , 383 Wis.2d 546, 916 N.W.2d 188, ¶¶ 20-24. We explained that the identity theft statute Stewart was charged under is a "companion" statute to the one used to prosecute Mason. We wrote: "[ Section 943.203 ] protects the personal identifying information or documents belonging to an entity , [while] the companion statute [ WIS. STAT. § 943.201 ] protects the personal identifying information or documents belonging to an individual ." Id. , ¶ 19. The pertinent part of the "representing" language in both statutes is strikingly similar:
• Section 943.203(2) provides: "by representing that the person is the entity or is acting with the authorization or consent of the entity."
• Section 943.201(2) provides: "by representing that he or she is the individual, [or] that he or she is acting with the authorization or consent of the individual."
¶ 17 The charges in Stewart arose out of Stewart's effort to deceive a presentence investigation report (PSI) author and a sentencing court into believing that Stewart had two bachelor's degrees and that a bad conduct discharge from the military had been upgraded to a general discharge. Stewart , 383 Wis.2d 546, 916 N.W.2d 188, ¶¶ 6-7. Stewart provided to the PSI author what appeared to be diplomas from two universities and a letter that appeared to be from the Veterans Administration asserting that Stewart's bad conduct discharge had been upgraded to a general discharge. Id. , ¶ 6. After sentencing, an investigation revealed that all of the documents were forged, that Stewart did not *121 receive degrees from the universities, and that Stewart's attempt to upgrade his military discharge status had been unsuccessful. Id. , ¶ 8.
¶ 18 Stewart pled guilty to two counts of identity theft and later challenged the factual basis for his pleas. Id. , ¶¶ 9, 12. As with Mason's argument here, Stewart's underlying argument hinged on his statutory interpretation argument. See id. , ¶ 18. As here, Stewart argued that, properly construed, the "representing" element of identity theft requires proof of more than simply presenting a document. According to Stewart: "[H]e cannot be blamed ... if the PSI writer believed [the documents Stewart presented] were real because he never expressly said they were authentic or that he had authorization to present them." Id. , ¶ 21. In response, we essentially concluded *83 that the plain meaning of "represents" covers Stewart's actions. We wrote:
The [identity theft] statute does not require an express verbal representation from the offerer that the document is authorized. Rather, it requires that the user "represent" that the user is "acting with the authorization or consent of the entity." Stewart's actions did just that....
Stewart's actions fit the statutory language: by the act of presenting the documents to show the PSI writer his personal history and character, Stewart was implicitly saying they were real and he had consent to use them. The only reasonable inference for the PSI writer to draw is that Stewart had permission from the universities and the VA to use them.... Stewart availed himself of that expectation, and he cannot now protest that he committed no crime because he made no such explicit verbal representation. Therefore, contrary to Stewart's argument, his presentation of the documents in question as authentic does satisfy the requirement that Stewart was representing that he was acting with the entities' consent.
*122 Finally, to hold that the statute includes a requirement of an express verbal representation about the entity's consent would read too much into the statute, especially in a context where such representations would not be ordinarily necessary or expected.... [Stewart's proposed] interpretation would obstruct rather than carry out the legislature's intent.
Id. , ¶¶ 22-24 (citation and footnote omitted).
¶ 19 Similarly, here, it is reasonable to infer that, when Mason presented the cardholder's card, he implicitly represented that he was the cardholder or that he was authorized to use the card. Under the logic of Stewart , there is no basis to require some additional overt act or affirmative express representation.
¶ 20 We acknowledge that, in Stewart , we were not faced with the surplusage argument that Mason makes here. But we are unable to discern why Stewart does not require rejection of Mason's proposal that the "representing" element requires more than mere presentation of the card. Mason's surplusage argument would have had equal application in Stewart , and we perceive no relevant difference between the "representing" elements in the two companion identity theft statutes.
¶ 21 Thus, we conclude we are bound by Stewart to reject Mason's argument. See Cook v. Cook , 208 Wis.2d 166, 190, 560 N.W.2d 246 (1997) ("[T]he court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals.").
¶ 22 Moreover, even if this were an issue of first impression, we would reach the same result.
*123 ¶ 23 We agree with the common sense observation made in Stewart that the conduct of presenting certain documents containing an entity's identifying information carries with it the representation of permission to use that entity's information. See Stewart , 383 Wis.2d 546, 916 N.W.2d 188, ¶¶ 22-24. By that same logic, the presentation of someone else's document will generally carry with it the representation of permission to use that document, absent some reason to think otherwise. Indeed, the circuit court here relied on the same sort of reasoning. The circuit court opined: "If I walk up with a card and hand it to you to use to buy services, and I say nothing, I am implicitly saying I am this person without expressly saying it." In the words of the statute, Mason was effectively "representing *84 that he ... is the individual [who owns the cards or] that he ... is acting with the authorization or consent of the individual [who owns the cards]." See WIS. STAT. § 943.201(2).
¶ 24 Thus, just as we implicitly concluded in Stewart that the meaning of "representing" covered Stewart's conduct, we conclude here that Mason's presentation-of-the-cards behavior fits the plain meaning of the "representing" element.
¶ 25 As to Mason's surplusage argument, we are not persuaded.
¶ 26 The directive that we endeavor to give meaning to all parts of statutes so as to avoid surplusage is not a directive that we give different terms different meanings, regardless where that leads . As the United States Supreme Court has explained, the "preference for avoiding surplusage constructions is not absolute." See Lamie v. United States Trustee , 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ; see also Marx v. General Revenue Corp. , 568 U.S. 371, 385, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) ("The canon against surplusage is not an absolute rule...."). We understand *124 these pronouncements to mean that sometimes the most reasonable reading of a statute, one that gives it the legislatively intended effect, is one that renders some language in the statute surplusage. See Kalal , 271 Wis.2d 633, ¶¶ 44, 46, 681 N.W.2d 110 (to determine what the statute means to give its full, proper, and intended effect, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage" (emphasis added) ). If our interpretation renders either "use" or "representing" surplusage, that reading is consistent with what appears to us to be the obvious legislative intent.
¶ 27 In addition, so far as we can tell, Mason's proposal does not include a workable definition of "representing." Mason argues that the representing element must have a different meaning, but he does not propose a workable definition of that different meaning. Rather, Mason merely argues that "something more" than the presentation of the card is required. Mason gives some examples of the "something more" (forging the cardholder's name on a receipt, orally asserting a false identity or authorization, and use of a "PIN" number or "CVV" number), but he provides no general definition that could be used to instruct a fact finder on the element. More to the point, we are at a loss as to how Mason's reading of the "representing" element translates into a workable instruction on the element. If the trial evidence shows that a sales clerk looked at the name on a card and used that name to ask the defendant if he or she found everything okay, and the defendant answered "yes," is that a sufficient "something more"? Does that add anything meaningful to the mere presentation of the card? Against what definition would a fact finder make that decision? What general definition would guide a fact finder in deciding what other combination of words, *125 gestures, or omissions might suffice? Mason gives us no answer.
¶ 28 We conclude with an observation about a statute that we have not yet mentioned. WISCONSIN STAT. § 943.41(5)(a) 1.b. makes it a crime to fraudulently use a financial transaction card, but "use" is not an element of the crime. Rather, the elements are:
1) the defendant obtained anything of value by representing that he or she was the holder of a financial transaction card,
2) the defendant was not the person to whom the card was issued and acted without that person's consent,
3) the defendant acted with intent to defraud another.
*85 See WIS JI- CRIMINAL 1497A (2003). If Mason had been charged under this statute, he would have no surplusage argument and we would have had no trouble concluding that Mason's activity satisfies the "representing" element under § 943.41(5)(a) 1.b. The plain meaning of "representing" in this context would lead to the same reasoning employed in Stewart and used by the circuit court here. In the normal course, presenting a credit or debit card for payment carries with it the implicit assertion that one is the cardholder or that he or she is acting with permission. We make this observation because § 943.41(5)(a) 1.b. is a closely related statute employing the term "representing" and we assume the legislature intends the same meaning when it uses the same term in related statutes in the same chapter. See State v. White , 2004 WI App 237, ¶ 10, 277 Wis.2d 580, 690 N.W.2d 880 ("[I]n the absence of contrary evidence, language used in related statutes is *126 intended to have the same meaning."); see also Bank Mut. v. S.J. Boyer Constr., Inc. , 2010 WI 74, ¶ 31, 326 Wis.2d 521, 785 N.W.2d 462 ("When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears.").[4]
Conclusion
¶ 29 For the reasons above, we affirm Mason's conviction for two counts of identity theft.
By the Court. -Judgment affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version. We cite the current version for ease of reference. The statutory language that we apply here has not changed during the times relevant to Mason's prosecution.

Wisconsin Stat. § 943.201(2) reads:
(2) Whoever, for any of the following purposes, intentionally uses, attempts to use, or possesses with intent to use any personal identifying information or personal identification document of an individual, including a deceased individual, without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the authorization or consent of the individual, or that the information or document belongs to him or her is guilty of a Class H felony:
(a) To obtain credit, money, goods, services, employment, or any other thing of value or benefit.
(b) To avoid civil or criminal process or penalty.
(c) To harm the reputation, property, person, or estate of the individual.

We assume for purposes of this opinion that there are distinct "use" and "representing" elements. However, we note that the "representing" requirement in Wis. Stat. § 943.201(2) could be read as part of the definition of the required "use." The statute reads in part: "Whoever ... uses ... [a document or information] ... without the authorization or consent ... and by representing...." It is arguable that this language should be read requiring "use ... by representing."

We note that a recent unpublished opinion of this court addressed the precise question presented here. In State v. Gray , No. 2017AP452-CR, unpublished slip op., 2018 WL 2734974 (WI App June 6, 2018), the defendant was charged with and convicted of five counts of identity theft based on his unauthorized use of a credit card and a debit card. Id. , ¶¶ 1-4. Pertinent here, Gray argued on appeal that the evidence was insufficient to prove the "representing" element of identity theft because the evidence merely proved that Gray presented the cards, not that he represented that he was the cardholder, that he had the cardholder's authorization to use the cards, or that the cards belonged to him. See id. , ¶ 20. Gray contended that "allowing the act of using the card to satisfy both the first and fourth elements of the crime renders the fourth element mere surplusage." Id. We rejected Gray's argument, stating: "Intentionally using identification information and making the statutorily required representations are distinct elements. The State must prove both elements to secure a conviction. As with many crimes, the same act may satisfy two different elements. And in this case, Gray's act of using the cards can be taken as proof of both elements. This is not a surplusage problem." Id. , ¶ 22. Although we agree with the result in Gray , we do not rely on this reasoning.