Julie Aasen-Robles, Plaintiff-Appellant,

Minnesota Department of Human Services and Corporate Benefit Services of America, Involuntary-Plaintiffs-Appellants,

v.

Lac Courte Oreilles Band of Lake Superior Chippewa Indians and St. Paul Companies, Defendants-Respondents.

Court of Appeals

*No. 03–1143–FT. Submitted on briefs August 12, 2003.— Decided September 3, 2003.*

2003 WI App 224

(Also reported in 671 N.W.2d 709.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Andrew H. Morgan* of *Charlton, Morgan & Joy, Ltd.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric D. Hylden* of *Downs, Reyelts, Leighton, Bateman & Hylden, Ltd.* of Duluth, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. This case presents the issue of whether an employee exclusion in a general liability insurance policy bars coverage for Julie Aasen-Robles, a Lac Courte Oreilles Band of Lake Superior Chippewa Indians' employee, when she slipped and fell on her employer's premises before she started work.[1] Because a reasonable insured would interpret the language to only encompass those injuries originating from the employee's job and incurred while the employee is engaged in work, we reverse the judgment and remand to the trial court.

## BACKGROUND

¶ 2. For purposes of this appeal, the facts of the case are undisputed. Julie Aasen-Robles was an employee of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians (LCO) and worked at LCO's casino in the housekeeping department. On December 31, 1998, Aasen-Robles slipped and fell on an icy patch of sidewalk while walking toward an employee entrance on LCO's premises. When she fell, Aasen-Robles was on her way to work and had not yet punched in or commenced work. Her injuries prevented her from returning to her job.

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 3. LCO conducts its casino business pursuant to a gaming compact with the State of Wisconsin. At the time of the accident, the Gaming Compact of 1991 was in effect. This compact regulates the conduct of class III gaming by LCO.[2] *See* 25 U.S.C § 2703(6)-(8) (2001) (defining class III gaming). Among other things, it required LCO to maintain public liability insurance coverage with minimum policy limits.[3] In light of this requirement, LCO purchased a Public Entity General Liability Insurance Policy from St. Paul Fire & Marine Insurance Company (St. Paul). The gaming compact did not require LCO to provide worker's compensation for its employees, but LCO self-insured its employees to provide coverage for all work-related injuries or illnesses. LCO retained Corporate Benefit Services of America (CBSA) to administer this program.

¶ 4. Aasen-Robles obtained treatment for her injuries at the LCO clinic. There, she was referred to a hospital for physical therapy. While the CBSA administrator initially concluded her physical therapy would be

---

[2] The compact states:

II. DECLARATION OF POLICIES AND PURPOSES: The State and the Tribe agree that this Compact is entered for the following purposes and is to be construed and implemented to give effect to these policies:

A. To authorize the operation of certain Class III gaming by the Tribe on Tribal lands in the State of Wisconsin as a means of promoting Tribal economic development, self-sufficiency, and strong Tribal government

[3] The relevant section of the compact states:

XIX. LIABILITY FOR DAMAGE TO PERSONS AND PROPERTY

A. During the term of this Compact, the Tribe shall maintain public liability insurance with limits of not less than $250,000 for any one person and $4,000,000 for any one occurrence for personal injury, and $2,000,000 for any one occurrence for property damage.

paid by its policy, the administrator later told Aasen-Robles her injuries were not work-related because she was not "in the door" or "on the clock" when she fell. The administrator advised Aasen-Robles to file a claim under LCO's general liability insurance. Aasen-Robles eventually sued St. Paul.

¶ 5. Before trial, St. Paul moved for summary judgment. The circuit court granted summary judgment to St. Paul for two reasons. First, the court stated the insurance policy "specifically excluded employees of the tribe from coverage. Aasen-Robles was an employee of the tribe at the time of her injury. She was on her way to work, on the employer's property when she fell and was injured. . . . The policy does not cover employees."[4] Second, the court rejected the fact that the administrator of CBSA informed Aasen-Robles her injury would be covered under the general liability policy because these representations could not change the language of the policy. Aasen-Robles appeals.

¶ 6. Aasen-Robles argues she is entitled to coverage for her injuries from St. Paul for two reasons. First, under the terms of the gaming compact, she argues her injury was sufficiently related to the "conduct of class III gaming" to allow recovery against St. Paul. Second, she claims the exclusion in St. Paul's policy that bars coverage for injuries to employees "arising out of and in the course of [her] . . . employment" should not apply to her because she was not working at the time of her injury.

---

[4] The court's conclusion is not clear in its written order. On the one hand, it appears to say all employees are not covered under the policy, regardless of the circumstances surrounding the injury. On the other hand, it referred to circumstances when employees are actually working.

¶ 7. St. Paul, on the other hand, claims Aasen-Robles is not entitled to coverage under the policy for two reasons. First, St. Paul argues LCO was only required to obtain liability insurance for "class III gaming activities" under the gaming compact. Aasen-Robles, however, was not engaged in class III gaming activity at the time she slipped and fell. Therefore, the policy does not afford coverage to her claim. Second, St. Paul claims Aasen-Robles's injuries fall under the employee exclusion.

¶ 8. We conclude the circuit court erred by granting summary judgment to St. Paul. In so doing, we hold (1) the Gaming Compact of 1991, which required LCO to obtain liability insurance for class III gaming activities, has no bearing on whether Aasen-Robles's injuries are covered under the provisions of St. Paul's general liability insurance policy, and (2) Aasen-Robles's injuries are not barred by the exclusion because a reasonable insured would interpret the language to encompass only those injuries originating from an employee's job and incurred while the employee is engaged in work.[5]

### DISCUSSION

¶ 9. When reviewing a summary judgment, our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We perform

---

[5] Because we hold the exclusion does not apply because of what a reasonable insured would understand it to mean, we do not address whether the representations CBSA made to Aasen-Robles affects the terms of the policy. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged.").

the same function as the trial court. *Id.* On summary judgment, a court must view the facts in the light most favorable to the nonmoving party. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08.

¶ 10. Turning to the parties' first arguments, both seem to agree that in order for the injuries to be compensable under the insurance policy, a connection must be made between the general liability insurance policy, the gaming compact (which only regulates class III gaming activities), and the circumstances surrounding Aasen-Robles's injuries. Aasen-Robles spends a great deal of time in her appellate brief explaining her injury was related to class III gaming activities by virtue of her job duties, despite the fact she was not working, and thus concluding her injuries involve class III gaming activities which entitles her to coverage under the policy. In contrast, St. Paul argues Aasen-Robles was not engaged in gaming activities when she slipped and fell, but was rather engaged in, what it calls, "employment activities." Consequently, St. Paul claims Aasen-Robles is not entitled to coverage under the insurance policy.

¶ 11. Both parties construct their arguments on the premise that *Taylor v. St. Croix Chippewa Indians*, 229 Wis. 2d 688, 694–95, 599 N.W.2d 924 (Ct. App. 1999), stands for the proposition that an insurance policy purchased in light of a gaming compact will always be limited to class III gaming activities. This is a misunderstanding of *Taylor*.

341

¶ 12. In *Taylor*, the St. Croix nation entered into a gaming compact with Wisconsin to operate gaming facilities on its reservation. This compact, like the compact between Wisconsin and LCO, required St. Croix to "maintain public liability insurance with limits of not less than $250,000 for any one person." *Id.* at 694. In response, St. Croix purchased a comprehensive business policy that included general liability insurance. This insurance policy, similar to the insurance policy in this case, excluded employees injured in the course and scope of employment.

¶ 13. Taylor was a St. Croix employee and was injured while building a youth center on St. Croix nation territory. Taylor did not dispute his injuries were barred from coverage under the liability insurance by virtue of the employee exclusion. Rather, Taylor argued the construction of the youth center was a class III gaming activity because it was funded by gaming revenues. The exclusion of his injuries under the liability policy violated the gaming compact's requirement to obtain liability insurance for all class III gaming activities. Accordingly, Taylor claimed he was entitled to sue St. Croix because they waived their sovereign immunity by failing to insure a class III gaming activity as mandated by the compact, or, in the alternative, sought to reform the general liability insurance contract to strike the provision excluding employees from coverage.

¶ 14. We held Taylor was not engaged in a class III gaming activity when he was injured while constructing the youth center. *Id.* at 695. The mere fact the construction project was funded by gaming revenue did not transform the activity into a gaming activity. *Id.* Thus, there was no reason to address Taylor's arguments of whether St. Croix waived its sovereign immunity by

failing to insure a particular gaming activity or if reformation of the insurance policy was appropriate. The insurance policy's employee exclusion applied to the circumstances of Taylor's injuries did not violate the gaming compact. *Id.* at 694–95. The gaming compact "required St. Croix to maintain liability insurance only with respect to its gaming activities." *Id.* at 694. We noted that "Wisconsin has no reason or authority to impose an obligation on the tribe to maintain liability insurance for anything beyond its gaming activities" because to do so would "obviously reach beyond the purpose and intent of the gaming compact." *Id.* at 695.

¶ 15. The parties interpret this to mean the gaming compact's requirement to obtain liability insurance for class III gaming activities necessarily limits the coverage of an insurance policy, obtained in light of the gaming compact, to gaming activities only. The parties misunderstand the distinction *Taylor* makes between what a gaming compact requires of a tribe and what the tribe actually does in response to the requirement.

■

¶ 16. The above-quoted language from *Taylor* recognizes that tribes are only required to obtain liability insurance for its class III gaming activities because the gaming compact only concerns class III gaming activities. But what the gaming compact requires of a tribe and what the tribe actually does in light of the requirement are two very different issues. Put simply, the gaming compact sets the floor, not the ceiling, for liability coverage requirements. If in light of this, the tribe purchases a comprehensive general liability policy that does not limit its coverage to class III gaming activities, the insurance policy will not be reformed to restrict the scope of coverage to such activities unless reformation is otherwise appropriate. *See Pouwels v.*

343

*Cheese Makers Mut. Cas. Co.*, 255 Wis. 101, 106, 37 N.W.2d 869 (1949) (reformation of insurance policy allowed only where evidence clearly and satisfactorily establishes the terms of the policy are not fully or correctly set forth in policy because of inadvertence, accident, or mistake). Rather, we will interpret the policy just as any other contract or insurance policy: that is, we start with the language of the policy. *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992).

██

¶ 17. The language of the policy here does not limit coverage to bodily injuries stemming from class III gaming activities.[6] Instead, it provides broad coverage for "bodily injury" caused by an "event." The policy defines "bodily injury" as "physical harm . . . to the physical health of other persons." "Event" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The plain meaning of this language cannot reasonably be said to limit the scope of coverage to bodily injuries arising from class III gaming activities.

¶ 18. The next issue is whether Aasen-Robles's injuries are excluded by virtue of the employee exclusion. The exclusion states, "We won't cover bodily injury to an employee of the protected person arising out of and in the course of his or her . . . employment." The interpretation of an insurance contract and the conclusion as to whether coverage exists are questions of law

---

[6] Aside from St. Paul's bald assertion that the insurance policy is limited by its own terms to class III gaming activities, neither party has cited any language in the policy that limits the scope of its coverage to such activities. Our review of the policy likewise finds no terms in the policy that limit its scope to class III gaming activities.

which we review de novo. *Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis. 2d 56, 61, 601 N.W.2d 312 (Ct. App. 1999). We interpret insurance contracts to give effect to the intentions of the parties. *Kennedy v. Washington Nat. Ins. Co.*, 136 Wis. 2d 425, 428, 401 N.W.2d 842 (Ct. App. 1987). We give meaning to the terms of the policy "in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean." *Id.* at 428–29 (citations omitted). We give words "the common and ordinary meaning [they] would have in the mind of a lay person." *Employers Health Ins. v. General Cas. Co.*, 161 Wis. 2d 937, 946, 469 N.W.2d 172 (1991). In the end, "Interpretation of the policy should further the insured's expectations of coverage." ARNOLD P. ANDERSON, WISCONSIN INSURANCE LAW § 1.1(A) (4th ed. 1998).

¶ 19. Aasen-Robles argues the trial court erred by applying the exclusion to her because the plain language of the exclusion does not exclude all employees from coverage all the time. We agree. The plain language of the exclusion only bars coverage for employee injuries that arise out of and occur in the course of employment.

¶ 20. Aasen-Robles further argues the exception should not be applied to her because she was not in the course of employment when she was injured, nor did her injury arise out of her employment. Aasen-Robles claims she was simply walking to the employee entrance before beginning work. Because she was not "on the job," her injuries cannot reasonably be said to fall under the exclusion.

¶ 21. St. Paul counters this argument by contending the exclusion unambiguously excludes all "work-

related injuries," and since Aasen-Robles fell at the employee entrance on her way to work, there can be no doubt that her injury arose out of and occurred in the course of her employment. St. Paul cites *Makal v. Industrial Comm'n*, 262 Wis. 215, 54 N.W.2d 905 (1952), and WIS. STAT. § 102.03(1)(c)2 to support its contention that an employee is in the course of employment when going to and from their employment while on the employer's premises.

¶ 22. St. Paul's reliance on these authorities is misplaced for two reasons. First, both authorities implicate worker's compensation law principles. The issue here does not involve worker's compensation law because LCO is not subject to Wisconsin's worker's compensation system.[7] Second, worker's compensation laws are remedial in nature and are consequently "liberally construed in favor of including all services that can in any sense be said to reasonably come within it." *Severson v. Industrial Comm'n*, 221 Wis. 169, 175, 266 N.W. 235 (1936). Because of this liberal construction, to use worker's compensation cases as precedent for construing the exclusion in the general liability policy is at odds

---

[7] Indian tribes are " 'distinct, independent political communities' " that retain their right to self-govern. *Davids v. Coyhis*, 869 F. Supp. 1401, 1405 (E.D. Wis. 1994) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978)). Because of this, Indian tribes generally are not subject to the laws of the state wherein their territory resides. Indian tribes are, however, subject to federal statutes or treaties with the United States and cannot supplant these laws with their own. *Davids*, 869 F. Supp. at 1405–06. Because worker's compensation is a matter left to the states, Indian tribes are not subject to these schemes, regardless of whether they are compulsory for every other employer in the state.

with insurance law principle that we are to interpret the language of an insurance policy according to what a reasonable person in the position of an insured would have understood the words to mean. *See Caporali v. Washington Nat'l Ins. Co.*, 102 Wis. 2d 669, 675–76, 307 N.W.2d 218 (1981).

¶ 23. Interpreting the exclusion from the standpoint of a reasonable insured and using the common, ordinary definitions of words a lay person would give them, we hold that Aasen-Robles's injuries did not arise out of or occur in the course of her employment. The lay dictionary definition of "arise" means "to originate from a specified source." WEBSTER'S THIRD NEW INT'L DICTIONARY 117 (unabr. 1993). "Course" refers to the "act or action of moving in a particular path from point to point." *Id.* at 522. And "employment" is an "activity in which one engages and employs his time and energies . . . as . . . work." *Id.* at 743. Putting the pieces together, a reasonable insured would understand an injury to be excluded under the employee exclusion if an employee suffers injuries originating from his or her job and while the employee is engaged in work. These facts are not present here, so the exclusion does not apply.

¶ 24. We find further support for our holding in *Artukovich v. St. Paul-Mercury Indem. Co.*, 310 P.2d 461, 468 (Cal. App.2d 1957). There, the California Court of Appeals construed a similar exclusion in a general liability provision and held that it applied only where the employee was at the place of employment, during working hours, and actually engaged in employment duties at the time of the injury.[8] As the court

---

[8] Other jurisdictions have rejected this approach. *See Cowen v. Mercury Fin. Co.*, 607 So.2d 1067, 1068 (La. App. 1992); *Milbank Mut. Ins. Co. v. Biss*, 161 N.W.2d 622, 625 (Minn.

explained, "Everyone who is engaged in the employment of the insured would be its employee, but not every employee is engaged in the employment of the insured all the time." *Id.* Consistent with this reasoning, we hold the employee exclusion does not apply to the facts of this case because Aasen-Robles's injuries did not originate from her employment and she was not actually engaged in her employment duties at the time her injury occurred. Therefore, we reverse the judgment and remand the matter to the circuit court for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

1968); *Progressive Cas. Ins. Co. v. Marca,* 788 P.2d 490, 491 (Or. App. 1990). Focusing on how the language of the exclusion is virtually identical to language in worker's compensation statutes, these jurisdictions use worker's compensation precedents to construe the language in the general liability exclusions. *See, e.g., Biss,* 161 N.W.2d at 625 ("[W]e are unwilling to hold that one who is injured is an employee for purposes of applying the compensation act but is not an employee for purposes of affording liability insurance coverage."). However, as explained before, because LCO did not have a worker's compensation scheme at the time of the injury and because they are not subject to Wisconsin's worker's compensation system, we conclude it would be inappropriate to apply worker's compensation principles as precedent to construe the exclusion at issue.