Scott A. BALZ and Connie L. Balz,
Plaintiffs-Respondents-Cross-Appellants,

v.

HERITAGE MUTUAL INSURANCE COMPANY
(n/k/a Acuity, a Mutual Insurance Company),
Defendant-Appellant-Cross-Respondent,

WAUSAU AREA HMONG MUTUAL ASSOCIATION,
Defendant-Respondent-Cross-Respondent,

CONTINENTAL INSURANCE COMPANY
and Estate of Tou Xiong Lor, Defendants,

MSI INSURANCE COMPANY, Defendant-Respondent,

GREENHECK WI PARTNERSHIP Administered
by Wausau Benefits, Inc.,
Defendant-Subrogee,

Darlene BALZ and Jordan Balz,
Third-Party Defendants.

Court of Appeals

*No. 2004AP1626. Submitted on briefs March 23, 2006.
—Decided June 6, 2006.*

2006 WI App 131

(Also reported in 720 N.W.2d 704.)

703

705

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the brief of *Terrance E. Davczyk* of *Davczyk & Varline, LLC* of Wausau, and *John R. Shull, Jr.* of *Terwilliger Law Firm* of Wausau, and reply brief of *Terrance E. Davczyk* of *Davczyk & Varline, LLC*.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Matthew E. Yde* of *Strasser & Yde, S.C.* of Wausau.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James A. Higgins* of *Goyke, Tillisch & Higgins, LLP* of Wausau.

On behalf of the defendant-respondent-cross-respondent, the cause was submitted on the brief of *John R. Schull, Jr.* of *Terwilliger Law Firm* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.  Heritage Mutual Insurance Company appeals a circuit court judgment, arguing the court erred when it:  (1) failed to use the language of

an insurance policy in a special verdict, preventing the jury from properly deciding insurance coverage; (2) excluded evidence of practice, routine or habit; and (3) denied a request for a new trial due to the cumulative effect of the alleged errors. Heritage also argues the jury's award for future loss of earning capacity was excessive. We affirm the judgment and hold respectively: (1) the language used in the special verdict was appropriate; (2) the court properly excluded improper character evidence; and (3) no errors were present that required a curative instruction or a new trial. We further hold that the jury's award was supported by credible evidence and was not excessive.

¶ 2.   Scott and Connie Balz cross-appeal a circuit court judgment arguing the court erred when it: (1) refused to award Scott Balz interest and costs based upon his statutory offer of settlement; and (2) erroneously exercised its discretion by reducing the jury award for future medical expenses. We affirm the judgment and hold respectively: (1) the court properly refused to award interest and costs because Scott's judgment was not more favorable than the offer of settlement; and (2) credible evidence supported the court's reduction in the jury award for future medical expenses.

## I. Appeal

## Background

¶ 3.   On September 20, 2000, Xia Tou Lo a/k/a Tou Xiong Lor, collided his vehicle with a vehicle driven by Scott Balz after Lo failed to stop for a stop sign. Lo was killed in the accident, and Balz was seriously injured. Balz and his wife Connie filed suit against several parties including Lo, the Wausau Area Hmong Mutual Association (the Association), Heritage Mutual Insur-

708

ance Corporation (the Association's liability carrier), Continental Insurance Company (Lo's liability carrier), and MSI Insurance Company (the Balzes' underinsured motorist carrier).

¶ 4. The Balzes alleged "that at the time of the accident, Lo was in the course and scope of his employment for the Wausau Area Hmong Mutual Association." Heritage denied any liability and moved for bifurcation of the coverage issue from the liability and damages issue, arguing that there was evidence Lo was conducting personal business at the time of the accident. Thus, Heritage asserted under the language of the policy it did not cover the claims of the Balzes.

¶ 5. At trial, the Balzes' proposed jury instructions included Wis JI—Civil 4035—Servant: Scope of Employment (1997) and Wis JI—Civil 4045 Servant: Scope of Employment While Traveling (1994). The parties also proposed several special verdict questions. The trial court ultimately ruled that the Heritage policy language was equivalent to course and scope of employment and gave Wis JI—Civil 4035 and 4045 and provided a special verdict question with course and scope of employment language. The jury's verdict found that Lo was in the scope of his employment, and the court found that there was coverage under the Heritage policy. MSI was dismissed from the case.

¶ 6. Heritage filed a motion after verdict and a motion for a new trial, and the trial court denied both. After our decision in *Aasen-Robles v. Lac Courtes Orielles Band of Superior Chippewa Indians*, 2003 WI App 224, 267 Wis. 2d 333, 671 N.W.2d 709, Heritage renewed its motions for a new trial based on the *Aasen-Robles* holding, which the court again denied. A jury trial was held to determine liability and damages, and the jury returned a verdict in favor of the Balzes.

709

## A. Language Used in the Special Verdict

¶ 7. Heritage argues that the trial court's failure to use language present in the insurance policy in the special verdict prevented "the jury from properly deciding the facts for the court to determine the insurance coverage." The special verdict stated:

> Was Xia Tou Lo, at the time of the accident causing his death, using his automobile while in the course and scope of his employment with the Wausau Area Hmong Association?

The court provided jury instructions based on WIS JI—CIVIL 4035—Servant: Scope of Employment and 4045—Servant: Scope of Employment While Traveling. The insurance policy language stated that Heritage must provide coverage for an employee's use of a non-owned automobile "while used in your business or your personal affairs." Because the special verdict used scope of employment language, Heritage insists "the jury was not asked to determine whether the employee was using the vehicle at the time of the accident in the business of his employer, but the much broader question of whether the driver was in the scope of employment."

¶ 8. "A trial court has wide discretion in framing the special verdict." *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995). The special verdict presented must fully and fairly inform the jury regarding the applicable principles of law. *Id.* We will not interfere with the form of a special verdict unless the question, taken with the applicable instruction, does not fairly present the material issues of fact to the jury for determination. *In re A.E.*, 163 Wis. 2d 270, 276, 471 N.W.2d 519 (Ct. App. 1991).

¶ 9. The court's special verdict language was proper. Generally, language present in an insurance policy must be interpreted to mean what a reasonable person in the position of the insured would understand that language to mean. *General Cas. Co. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1977). Any ambiguity in a policy should be interpreted in favor of coverage and against the insurer because the insurance company that provided the policy chose the ambiguous provisions. *Kopp v. Home Mut. Ins. Co.*, 6 Wis. 2d 53, 57, 94 N.W.2d 224 (1959).

¶ 10. Here, the insurance policy itself fails to fully define the term, "while used in your business or your personal affairs." Specifically, the policy does not address the meaning of "personal affairs." It is at least arguable that personal affairs could include virtually any action taken by an employee, even those actions not taken in the scope of business. Considering this ambiguity in the policy's language, it was not improper for the court to provide a special verdict regarding course and scope of employment and a jury instruction that further assisted the jury.

¶ 11. Heritage argues that the trial court incorrectly broadened the policy's coverage when the special verdict used scope of employment, a term often associated with worker's compensation law. Heritage relies on *Aasen-Robles*, where we were asked to determine whether the trial court erred when it used worker's compensation case law precedent to decide whether an employer's liability policy covered an employee. *Aasen-Robles*, 267 Wis. 2d 333, ¶ 22. We held that it was

improper for a court to rely on worker's compensation law when construing provisions under a general liability policy, stating:

> [W]orker's compensation laws are remedial in nature and are consequently "liberally construed in favor of including all services that can in any sense be said to reasonably come within it." Because of this liberal construction, to use worker's compensation cases as precedent for construing the exclusion in the general liability policy is at odds with insurance law principle that we are to interpret the language of an insurance policy according to what a reasonable person in the position of an insured would have understood the words to mean.

*Id.* (citation omitted).

¶ 12. Heritage has not demonstrated that the scope of employment language in the special verdict was prejudicial. Here, unlike *Aasen-Robles*, the special verdict and jury instructions were based on master/servant liability, not worker's compensation law. Because there was no accompanying jury instruction that defined scope of employment in a worker's compensation context, the policy language and special verdict language are functionally equivalent. Therefore, the special verdict was not improper.

## B. *Exclusion of Habit Evidence*

¶ 13. Heritage contends the court erroneously excluded testimonial evidence that Lo previously engaged in the practice, habit or custom of creating records to falsely reflect that he was conducting business of his employer when he actually was conducting personal business. The court excluded the evidence pursuant to

WIS. STAT. § 904.02,[1] stating that the testimony did not relate to Lo's habit, but to his character. Thus, the court concluded, the evidence was not relevant. Heritage argues the evidence is probative as to whether Lo was engaged in the business of the Association at the time of his death, and the court should have allowed Heritage to present the evidence.

¶ 14.    Our standard of review on the admission and exclusion of evidence is limited to whether the trial court erroneously exercised its discretion. *State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982). If a trial court applies the proper law to the established facts, we will not find an erroneous exercise of discretion if there is any reasonable basis for the trial court's ruling. *Id.*; *Steinbach v. Gustafson*, 177 Wis. 2d 178, 185–86, 502 N.W.2d 156 (Ct. App. 1993).

¶ 15.    The trial court properly excluded the evidence because the specific instances of conduct Heritage proposed presenting as evidence did not constitute admissible habit evidence, but instead went to Lo's character. Evidence of a person's habit is relevant because it is more probable that a person acted consistently with that habit. *French v. Sorano*, 74 Wis. 2d 460, 466, 247 N.W.2d 182 (1976). WISCONSIN STAT. § 904.06(2) provides:    "Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. WISCONSIN STAT. § 904.02 states:    "All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

sufficient in number to warrant a finding that the habit existed or that the practice was routine." Habit is a regular repeated response to a repeated, specific situation. *Hart v. State*, 75 Wis. 2d 371, 392 n.9, 249 N.W.2d 810 (1977). The frequency and consistency that behavior must be present to become habit is not subject to a specific formula, and its admissibility depends on the trial court's evaluation of the particular facts of the case. *Steinberg v. Arcilla*, 194 Wis. 2d 759, 768, 535 N.W.2d 444 (Ct. App. 1995).

¶ 16. Habit evidence is distinguishable from character evidence, which is generally not admissible. A party may be identified as having a habit for care, a habit of lying, or a habit of stealing. Evidence of such "habits" is more appropriately identified as character traits. Character is a generalized description of a party's nature, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. 1 McCormick on Evidence § 195 at 825 (John W. Strong 4ᵗʰ ed. 1992) (footnotes omitted).

¶ 17. Here, the evidence at issue did not rise to the status of habit. First, the evidence was not opinion, but alleged instances of conduct. However, the instances of conduct did not form any predictable pattern. Instead, at best, it demonstrated that Lo committed various, random falsification of his records to show that he was engaged in business matters. It is not discernable what frequency and regularity Lo engaged in this behavior. Thus, there were no "specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine." *See* Wis. Stat. § 904.02.

¶ 18. Further, and more to the point, even if this evidence was admissible, it would not show that Lo

actually was engaging in personal business on the day of the accident. The record does not indicate that any testimony provided would address Lo's records for the day of the accident. Therefore, the evidence would essentially reveal Lo's alleged propensity for dishonesty. Because admitting this testimonial evidence effectively would have singularly addressed Lo's character and not any predictable habit, the trial court reasonably exercised its discretion when it excluded the evidence.

## C. Errors at Trial

¶ 19. Heritage asserts that the cumulative effects of errors during the trial merited a curative instruction or a new trial. The trial court previously denied Heritage's motion for a new trial. We analyze whether there has been a clear showing that the trial court erroneously exercised its discretion when it denied the motion for a new trial. *See State v. Bunch*, 191 Wis. 2d 501, 506–07, 529 N.W.2d 923 (Ct. App. 1995).

¶ 20. Heritage argues that the Balzes' counsel tainted the jury when he commented, through questions to witness Barbie Muetzel, about the coverage issue the jury would later decide. Heritage asserts a motion in limine proscribed these comments. Further, Heritage asserts that the Balzes' counsel intimated to the jury that Heritage was attempting to improperly avoid coverage. Heritage also argues that the Balzes improperly called Muetzel.

¶ 21. We agree with the trial court that Heritage's counsel opened the door for such questioning in his cross-examination of Scott and other witnesses. For

example, Scott was the first witness to testify in this case, and the following exchange occurred between him and Heritage's counsel:

Q: And you understand it's likely to your benefit to make it look like it's likely that this gentleman who was killed was going to see True Lor, right? I mean you recognize that?

A: Right.

Q: So when you answered these questions, you were answering these questions about time and routes of choice with the understanding how that benefits you and also with the background of somebody who's lived in this area all of their life?

A: Right.

Heritage went on to elicit testimony from other witnesses that further opened the door for the Balzes' counsel's questioning. Moreover, considering the opening statements, attorney questioning and final arguments, the jury was already well aware that they would be deciding an issue of coverage and the repercussions of their decision. Considering the preceding, the questioning and testimony of Muetzel, who was properly called to rebut the testimony of another witness, was also appropriate.

*D. Jury's Award for Future Loss of Earning Capacity*

¶ 22. Heritage contends the jury's award of $264,000[2] to Scott for future loss of earning capacity

---

[2] Heritage's brief incorrectly indicates the jury awarded $375,000 for future loss of earning capacity, but this amount was actually for past and future pain, suffering and disability.

was excessive and unsupported by credible evidence. The supreme court articulated the following standard in *Bergmann v. Ins. Co. of N. Am.*, 49 Wis. 2d 85, 87–88, 181 N.W.2d 348 (1970), for assessing a jury verdict:

> If there is any credible evidence which under any reasonable view fairly admits of inferences which support the jury's verdict, the verdict must be sustained, and neither the trial court nor this court may tamper with it . . . . The evidence must be considered in the light most favorable to the jury verdict . . . . Furthermore, the trial judge and this court are only to consider the evidence which supports the jury's verdict . . . . The evidence supporting the verdict must be accepted by the court unless it appears that the evidence is patently incredible.

Moreover, "[i]f there is credible evidence to support the jury verdict, it does not matter that it is contradicted or that the contradictory evidence is stronger and more convincing." *Upton v. Tatro*, 68 Wis. 2d 562, 570 229 N.W.2d 691 (1975). Future loss of earning capacity is calculated by identifying the difference, due to the injury, between earning capacity before an injury and after an injury. *See Dietz v. Goodman*, 256 Wis. 370, 374, 41 N.W.2d 208 (1950).

¶ 23.    Here, credible evidence exists to support the jury's verdict. A vocational rehabilitation expert testified that he analyzed Balz's pre-injury net and gross earnings and the average earnings of other occupations Balz was capable of performing prior to the injury. He then compared these figures to occupations that Balz could perform post-injury, given his education and skill level. Therefore, the expert's calculation represents credible evidence upon which the jury could have based its verdict.

¶ 24. Heritage implies that the vocational expert improperly calculated Balz's earning capacity because he failed to base this calculation on Balz's net income from the five previous years. However, earning capacity is not solely a snapshot of the wages earned at a particular point in a person's working life. Earning capacity involves "comparing what the injured party was capable of earning before and after the time of the injury." *Klink v. Cappelli*, 179 Wis. 2d 624, 630, 508 N.W.2d 435 (1993). Thus, we reject Heritage's implied argument that simply averaging prior net income provides the appropriate means to calculate earning capacity.

## II. Cross-Appeal

### Background

¶ 25. Following the trial on liability and damages, the jury apportioned causal negligence of 96% to Lo and 4% to Balz. The jury awarded $1,007,475 in damages to Balz and $100,000 in damages to his wife Connie. The amount awarded to Balz included $250,000 for future medical expenses. Following the motions after verdict, the total verdict for Balz was $793,475, and the net verdict including the 4% contributory negligence was $761,736. This amount was based on a reduction of the future medical expenses award from $250,000 to $36,000. The final verdict for Connie was $96,000.

¶ 26. Prior to the jury verdict, Balz served a statutory offer of settlement on Heritage and the Association, which stated the following:

> Pursuant to WIS. STAT. § 807.01(3), plaintiff, Scott A. Balz, offers to settle all of his claims against Heritage Mutual Insurance Company and Wausau Area Hmong

Mutual Association for $750,000, with costs. If Heritage Mutual Insurance Company and Wausau Area Hmong Association accept this offer of Settlement, plaintiff, Scott A. Balz, agrees to indemnify and hold Heritage Mutual Insurance Company and Wausau Area Hmong Association harmless for any subrogation claims arising out of the payment of medical and hospital bills on behalf of plaintiff, Scott A. Balz.

¶ 27. The Association's policy, provided by Heritage, contained bodily injury limits of $250,000 per person and $500,000 per accident. Heritage further issued an umbrella policy providing an aggregate liability limit of an additional $1,000,000. The policy states:

> We will pay all sums and insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
>
> . . . .
>
> In addition to the limit of insurance, we will pay for the insured:
>
> . . . .
>
> (5) all costs taxed against the insured in any suit against the insured we defend.

¶ 28. Lo had a liability policy through Continental with limits of $50,000 per person and $100,000 per accident. Lo was ultimately dismissed as a defendant without any objection because no estate had been created following his death. Balz subsequently filed a bill of costs requesting interest and double costs from Heritage and the Association based on the previous statutory offer of settlement for $750,000. Connie also

filed a bill of costs against Continental for statutory attorney fees plus 12% post-verdict interest on her $96,000 verdict.

*A. Interest and Costs*

¶ 29. Balz contends the trial court erred by refusing to award him interest and costs based upon his statutory settlement offer. This presents us with a question of law that we review independently. *In re Omernik*, 112 Wis. 2d 285, 290, 332 N.W.2d 307 (1983).

¶ 30. WISCONSIN STAT. § 807.01 permits a plaintiff to serve a written offer of settlement with costs on a defendant. If the offer is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the taxable costs. WIS. STAT. § 807.01(3). Further, the plaintiff is entitled to 12% annual interest on the recovered amount from the date of the offer of settlement until the judgment is paid. WIS. STAT. § 807.01(4).

¶ 31. Providing double costs and interest on rejected settlement offers when a party recovers a more favorable judgment exists to encourage settlement and secure just, speedy and inexpensive determinations of disputes. *Prosser v. Leuck*, 225 Wis. 2d 126, 140, 592 N.W.2d 178 (1999). The imposition of costs and interest for rejection of statutory settlement offers are punitive. *Blank v. USAA Prop. & Cas. Ins. Co.*, 200 Wis. 2d 270, 279, 546 N.W.2d 512 (Ct. App. 1996).

¶ 32. The Balzes contend the trial court improperly apportioned $50,000 of Lo's Continental policy to Scott and Connie, thus reducing Scott's total judgment against the Association and Heritage below $750,000.

Reduction below $750,000 would not satisfy Scott's offer of settlement, and he would not be entitled to costs.

¶ 33.  It is argued that the settlement offer itself was ambiguous, and therefore, unenforceable. A party making a settlement offer must communicate it in clear and unambiguous terms, and "[a]ny ambiguity in the offer of settlement is construed against the drafter." *See Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 576, 538 N.W.2d 849 (Ct. App. 1995). The validity of an offer of settlement is based on whether the offer allows the offeree "to fully and fairly evaluate the offer from his or her own independent perspective." *Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 75, 543 N.W.2d 852 (Ct. App. 1995).

¶ 34.  Here, the statutory offer of settlement was not ambiguous because the terms were clearly presented. The offer was made to the Association based on a theory of respondeat superior liability. The offer was for $750,000, which was within the policy's limits. Further, the offer clearly stated that Balz would indemnify and hold harmless the Association and Heritage for any subrogation claims arising out of the payment of medical and hospital bills.

¶ 35.  However, we agree with the trial court that the Balzes do not have the ability to determine how to apportion Continental's policy. Citing both *Wondrowitz v. Swenson*, 132 Wis. 2d 251, 392 N.W.2d 449 (Ct. App. 1986), and *Stahl v. Sentry Ins.*, 180 Wis. 2d 299, 509 N.W.2d 320 (Ct. App. 1993), the court ruled that the Continental policy must be apportioned pro rata in proportion to each plaintiff's damages. WISCONSIN STAT. § 807.03 is clear:  "if the offer of settlement is not

accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of taxable costs." A court must look at the amount of the judgment, not at the amount of the jury's verdict. Here, the trial court's May 20, 2004 judgment set Scott Balz's judgment amount at $717,336, which is less than the $750,000 of the offer of settlement. Thus, the court properly refused to award costs and interest.

¶ 36.  Despite the Balzes' argument to the contrary, the trial court correctly distributed Continental's $50,000 policy pro-rata. Generally, the proceeds of an inadequate liability limit should be distributed on a pro-rata basis calculated by comparing the amount of damages recovered by Connie to the amount recovered by Scott. *Wondrowitz*, 132 Wis. 2d at 258–59; *see also Stahl*, 180 Wis. 2d at 305–06. In *Wondrowitz*, the defendant had policy limits of $30,000, and three plaintiffs were making a claim for the entire $30,000 limit. *Wondrowitz*, 132 Wis. 2d at 258. The $30,000 limits were insufficient to satisfy all three plaintiffs' damages. *Id.* The trial court awarded one of the plaintiffs greater than her pro-rata share of the $30,000. *Id.* We held the trial court erred, concluding:

> Where several claims arising from one accident are joined in one suit against the insurer whose maximum liability under the policy is inadequate to pay in full the amounts to which the claimants become entitled, it has generally been held that the proceeds are to be distributed on a pro rata basis in accordance with the amount of damage suffered by each claimant.

*Id.* at 258–59. Based on *Wondrowitz* and *Stahl*, the plaintiffs are unable to allocate all of Continental's $50,000 to Connie.

¶ 37. The Balzes argue that *Wondrowitz* and *Stahl* are inapplicable because no additional liability coverage was available in those cases. The Balzes fail to fully explain how this fact distinguishes this case such that apportionment of the Continental policy should be delayed until calculation of the amount owed by Heritage. Certainly, this case illustrates that the apportionment of a policy can make a significant difference to the parties, even if other coverage compensates the plaintiffs for their damages. We conclude that the tenor of analogous case law suggests that plaintiffs should not be permitted to unilaterally allocate compensation to their own ends.

¶ 38. The Balzes also argue Continental's policy limits should not have been apportioned to Scott and Connie Balz on a pro-rata basis because not all potential claimants were involved in the apportionment of the policy. They contend by apportioning the $50,000 to the Balzes, the court usurped the rights of Jordon, Gary and Darlene Balz. Jordon and Darlene were also injured in the collision. Gary, Darlene's husband, pursued a claim for loss of consortium. The Balzes claim "the trial court apportioned 50% of the Continental proceeds among only 40% of the claimants, leaving only $50,000 of the policy to satisfy the claims of Jordon, Gary, and Darlene Balz." However, at the apportionment, only Scott and Connie Balz actually had a judgment against Continental, so the pro-rata apportionment to only Scott and Connie was appropriate. It would be improper to require a trial court to predict the outcome of future litigation.

*B. Reduction of Future Medical Expenses*

■

¶ 39. The Balzes contend the trial court erred when it reduced the future medical expenses award. An

appellate court will only overturn a trial court's remittitur order "when it finds that the circuit court erroneously exercised its discretion." *Carlson & Erickson Bldrs. v. Lampert Yards*, 190 Wis. 2d 650, 668, 529 N.W.2d 905 (1995). This court will not reverse the trial court's discretionary determination if the record shows that the discretion was properly exercised and there exists a reasonable basis for the circuit court's determination after resolving direct conflicts in the testimony in favor of the prevailing party, even if this court could have reached a different conclusion. *See Olson v. Siordia*, 25 Wis. 2d 274, 284–85, 130 N.W.2d 827 (1964).

¶ 40. The jury awarded $250,000 for future medical and hospital expenses, which the trial court reduced to $36,000. The Balzes consented to this reduction by filing a remittitur. Examining the evidence admitted at trial, the trial court did not erroneously exercise its discretion when it reduced the jury's award for future medical and hospital expenses.

¶ 41. No credible evidence was presented that supported the $250,000 jury award. A medical expense award must be supported by competent medical evidence as to the reasonableness and necessity of the expense. *See Meracle v. Children's Serv. Soc.*, 149 Wis. 2d 19, 27, 437 N.W.2d 532 (1989). Expert medical opinion must be to a reasonable degree of probability. *See Branter v. Jenson*, 121 Wis. 2d 658, 663–64, 360 N.W.2d 529 (1985).

¶ 42. Scott suffered several severe injuries. Although evidence supported that he would experience future pain stemming from the injuries, it did not demonstrate that he would require future surgery or treatment supporting the $250,000 future medical and

hospital expenses award. The expert testimony that was presented supported the reduction to $36,000. Thus, the court did not erroneously exercise its discretion when it reduced the jury award.

*By the Court.*—Judgment affirmed.