COURT OF APPEALS
DECISION
DATED AND FILED

September 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1991-CR**

Cir. Ct. No. 2018CF87

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GRADY P. GANTA,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Grady Ganta appeals a judgment of conviction for identity theft based on Ganta's use of a credit card bearing the victim's name. Ganta argues: (1) that the evidence was insufficient to show that Ganta represented that he was the victim or was acting with the victim's consent or authorization; (2) that the circuit court erred by excluding evidence that the victim had a history of allowing others to use his credit card; (3) that the prosecutor's dismissal of a witness denied him a fair trial; (4) that the prosecutor's improper closing arguments denied him a fair trial; and (5) that the circuit court violated his right to due process at sentencing when the court sentenced Ganta based on his conduct on the day of trial. We affirm.

## Background

¶2 Ganta was charged with one count of identity theft for financial gain. According to the complaint allegations, Ganta used a credit card bearing the name of the victim, L.M., without L.M.'s permission. The case proceeded to trial, where the witnesses included L.M., an investigating officer, and Ganta.

¶3 L.M. testified that he gave his apartment key to his neighbor, C.H., so that she could take care of him after an operation. Around the same time, L.M. received a credit card statement in his name that was addressed to the neighboring apartment where C.H. lived with Ganta. L.M. said that the credit card was never in his possession and that he never made purchases with it. He said he knew nothing about the card, and that he did not consent to Ganta using his name or making purchases with the card. L.M. stated that he was computer "illiterate" and did not have access to the internet at his apartment.

¶4 The investigating officer testified that the application for the credit card was submitted online and contained L.M.'s personal information. However,

the phone number and email address on the application were not connected to L.M. Six purchases were made on the credit card in one day, totaling $299.99, just under the $300 credit limit. Surveillance video from a Kwik Trip, where one of the purchases occurred, showed a subject matching Ganta's description purchasing a $10 gift card. Ganta at first told the officer that he had not used the credit card in question, but, when confronted with the surveillance video, he admitted that it was probably him. Ganta also admitted to the officer that he made purchases at other locations shown on the credit card statement.

¶5    Ganta testified that he made purchases with the credit card, including the purchase shown on the surveillance video. Ganta claimed that L.M. gave him the card to cover $300 in fines that Ganta incurred while driving L.M.'s van without proper license plates. Ganta said that he did not know why the credit card statement was sent to his address instead of L.M.'s address.

¶6    The jury found Ganta guilty. At sentencing, the circuit court imposed three years of probation, with a condition of probation that Ganta serve thirty days in jail with Huber privileges. The court imposed the jail time based on Ganta's conduct on the day of trial, as detailed further below. We reference additional facts as needed for purposes of discussion.

### Discussion

*Sufficiency of the Evidence*

¶7    Ganta argues that the evidence was insufficient to prove one of the elements of his identity theft crime. We disagree that the evidence was insufficient.

3

¶8    In reviewing sufficiency of the evidence, we will uphold the jury's verdict "unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict …." *Id.*

¶9    Ganta argues that the evidence was insufficient to prove one element of identity theft:  that he intentionally represented that he was L.M. or was acting with L.M.'s consent or authorization.  *See* WIS. STAT. § 943.201(2) (2017-18)[1]. To quote Ganta's argument, Ganta contends:

> [N]owhere in this record did any witness present any evidence that Mr. Ganta represented that the credit card belonged to him.  No one testified that Ganta told a merchant "I am L.M." or that "this credit card belongs to me" or that "I am using it with the cardholder's consent." There was no evidence whatsoever that he held himself out to be L.M.

The State counters that Ganta's argument fails under *State v. Mason*, 2018 WI App 57, 384 Wis. 2d 111, 918 N.W.2d 78.  We agree with the State.

¶10    In *Mason*, the defendant was convicted of identity theft based on evidence that he used a debit card to make purchases at a gas pump and a fast food restaurant without the cardholder's authorization.  *See id.*, ¶¶6-7.  In concluding that the evidence was sufficient to satisfy the "representing" element, we stated

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

that "it is reasonable to infer that, when Mason presented the cardholder's card, he implicitly represented that he was the cardholder or that he was authorized to use the card." *Id.*, ¶¶19-20, 24. We further stated that "the presentation of someone else's document will generally carry with it the representation of permission to use that document, absent some reason to think otherwise." *Id.*, ¶23.

¶11 Similarly here, the jury could reasonably infer from Ganta's presentation of the credit card bearing L.M.'s name that Ganta was representing either that he was L.M. or that he had L.M.'s consent or authorization to use the card. Ganta points to no evidence that would make this inference unreasonable under the circumstances in this case.

¶12 Ganta contends that the jury could not permissibly draw the inference discussed in *Mason* without a specific instruction by the court or argument by the prosecutor that this inference is permissible. We disagree. Our reasoning in *Mason* did not depend on such an instruction or argument. *See id.*, ¶¶15-28.

*Evidence that Victim Allowed Others to Use Credit Card*

¶13 Ganta argues that the circuit court erred by excluding evidence that L.M. had a history of allowing others to use his credit card. To be clear, as we understand this argument and the record, Ganta does not mean the particular credit card that Ganta used here, but instead one or more other credit cards that L.M. had allowed others to use in the past.

¶14 "Our standard of review on the admission and exclusion of evidence is limited to whether the [circuit] court erroneously exercised its discretion." *Balz v. Heritage Mut. Ins. Co.*, 2006 WI App 131, ¶14, 294 Wis. 2d 700, 720 N.W.2d

704. "If a [circuit] court applies the proper law to the established facts, we will not find an erroneous exercise of discretion if there is any reasonable basis for the [circuit] court's ruling." *Id.*

¶15    According to Ganta, the circuit court made an error of law by evaluating evidence of L.M.'s history of allowing others to use his credit card, including evidence of specific instances of L.M.'s conduct in that regard, under the wrong framework. In its oral ruling, the circuit court referred to this evidence as "other acts" evidence, which is governed by WIS. STAT. § 904.04(2). Ganta argues that the court should not have evaluated the evidence under the other acts framework, and should have instead concluded that it is admissible "character trait" evidence under WIS. STAT. §§ 904.04(1) and 904.05.

¶16    The phrase "character trait" is not defined in the applicable statutes. However, this court has relied upon the following definition: "Character is a generalized description of a party's nature, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." *Balz*, 294 Wis. 2d 700, ¶16. Ganta does not persuade us that L.M.'s history of allowing others to use his credit card is a "character trait" under this definition. Further, Ganta does not identify some other definition or legal theory that would have required the circuit court to admit evidence that L.M. had a history of allowing others to use his credit card. Accordingly, we reject Ganta's argument that the circuit court erred by excluding such evidence.

*Prosecutor's Dismissal of Witness*

¶17    Ganta argues that the prosecutor's dismissal of a witness denied him a fair trial. Under the banner of this argument, Ganta also argues that the circuit court erred in two respects. We reject these arguments for the reasons that follow.

6

¶18   The witness in question was C.H., the woman with whom Ganta lived and to whom L.M. had given his apartment key.  Ganta concedes that the prosecutor subpoenaed C.H. and that he did not.  Ganta argues, however, that the prosecutor improperly interfered with his defense by releasing C.H. from the subpoena and repeatedly telling C.H. she should go home even though the prosecutor knew that Ganta intended to call C.H.  After the prosecutor released C.H., she left the courthouse and could not be reached to testify.

¶19   Ganta relies on *United States v. Smith*, 478 F.2d 976 (D.C. Cir. 1973), in which the court reversed a conviction based on a prosecutor's conduct toward a defense witness that resulted in the witness not testifying.  *See id.* at 977-79.  In *Smith*, however, the witness was subpoenaed by the defense.  *Id.* at 977.  Further, the court in *Smith* determined that the prosecutor in effect threatened the witness by informing the witness that he risked prosecution if he took the stand.  *See id.* at 977-79.  Here, in contrast, the defense did not subpoena C.H., and the circuit court found that the prosecutor "acted properly by simply dismissing her witness."  We are not persuaded by Ganta's reliance on *Smith*.

¶20   Ganta argues that the circuit court erred by denying his request for a mistrial based on the prosecutor's dismissal of C.H.  We are uncertain whether Ganta means this argument to stand alone regardless of *Smith*.  Either way, Ganta does not show that the circuit court misused its discretion by denying his request for a mistrial.  *See State v. Ford*, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61 ("A motion for mistrial is committed to the sound discretion of the circuit court.").

¶21   Ganta also argues that the circuit court erred by determining that C.H. was unavailable and, on that basis, allowing Ganta to introduce C.H.'s

statements to police in lieu of live testimony. Ganta contends that these statements were inadmissible hearsay. We agree with the State that, if there was any error in this regard, the error was harmless to Ganta. The statements by C.H. that Ganta's counsel read to the jury contained the same information that Ganta asserts he wanted to elicit from C.H. by live testimony: that L.M. had tried to give C.H. a credit card before, that L.M. was in love with C.H. and jealous of Ganta, and that L.M. was upset that C.H. and Ganta were living together.[2] As a consequence of the court's determination that C.H. was unavailable to testify, Ganta was allowed to introduce the statements by C.H. that he wanted, without subjecting C.H. to cross-examination. Ganta does not persuade us that live testimony by C.H. would have been more effective.

*Prosecutor's Closing Arguments*

¶22    Ganta argues that the prosecutor made improper closing arguments that deprived him of a fair trial. He argues that the prosecutor impermissibly vouched for L.M.'s credibility in the following portions of her argument:

> [L.M.] doesn't have a computer or an email address. He certainly seemed to be helped when he did want to use a computer by going to the library and getting assistance.
>
> *So I think it's credible* when [L.M.] comes to tell you that he didn't know anything about this credit card because he didn't fill out the application.
>
> He said he couldn't fill out the application. He doesn't have a computer. It was an online application. And he certainly didn't seem to know how to do it.

---

[2] The circuit court admitted C.H.'s statements notwithstanding its earlier ruling excluding evidence that Ganta had a history of allowing others to use his credit card.

8

And if he did, he wouldn't use a phone number that didn't belong to him. He wouldn't have used an email address that wasn't connected to him.

And he wouldn't have used an address that wasn't his. *So I think he's credible.*

He didn't apply for this credit card.

And when he says he didn't get the credit card, *I think he's testifying credibly on that too*, because it wasn't even going to be sent to his house.

It was going to get sent to [the] apartment … where [C.H.] and Grady Ganta lived.

*He's credible on that too.*

He didn't apply for the card, and didn't know about the card, and he didn't have the card. He certainly couldn't have consented to give anybody the opportunity to use that card.

….

And [L.M.] had no shame in saying, I've helped out in giving him a house, and giving him a few bucks here, and lending him his car; when he says that he didn't give Grady Ganta consent to use this card on August 11, 2017, *he's credible there too*.

(Emphasis added.)

¶23     Ganta also argues that the prosecutor impermissibly expressed her personal opinion on Ganta's guilt when the prosecutor stated "I don't think you should believe" Ganta's claim that he had L.M.'s permission to use the credit card. The prosecutor asserted:

And it sounds like, if we're to believe [Ganta], and *I don't think you should*, but if, for some reason, you were to believe him he needed that $300.

So if [L.M.] is being so generous just to say here's $300, use it how you want. Then why did he blow it all in one day at Taco Bell? And on a gift card for someone else?

> Because he wasn't using it for him because he stole that card.

(Emphasis added.)

¶24    Ganta contends that, although defense counsel failed to object to these assertions by the prosecutor, we may and should reverse based on the plain error doctrine.  We disagree that the prosecutor's assertions warrant reversal.

¶25    "When a defendant alleges that a prosecutor's statements constituted plain error, the test we apply is whether, in the context of the entire record of the trial, the statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *State v. Cameron*, 2016 WI App 54, ¶18, 370 Wis. 2d 661, 885 N.W.2d 611 (some internal quotation marks and quoted source omitted).

¶26    "During closing arguments, a prosecutor is entitled to 'comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces [the prosecutor] and should convince the jurors.'"  *Id.*, ¶19 (quoted source omitted).  "Further, 'a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented.'"  *Id.* (quoted source omitted).

¶27    In *State v. Lammers*, 2009 WI App 136, ¶23, 321 Wis. 2d 376, 773 N.W.2d 463, we stated that there is a "fine line" between commentary that is and is not permissible.  We warned in *Lammers* that a prosecutor's assertion that "I believe" a witness's testimony is "credible" "smacks of vouching for the witnesses."  *See id.*, ¶22.  We did not hold in *Lammers*, however, that such commentary necessarily constitutes plain error.  *See id.*, ¶¶22-24.  On the contrary,

we upheld the conviction in *Lammers* despite the prosecutor's use of such "questionable" commentary. *See id.*, ¶¶22, 24-25.

¶28 Here, as in *Lammers*, the prosecutor's assertions came close to crossing the "fine line." Nonetheless, we are satisfied that the statements did not so infect Ganta's trial with unfairness as to make Ganta's conviction a denial of due process. The prosecutor's statements regarding her belief in L.M.'s credibility and in Ganta's guilt were in each instance expressly tied to the evidence. As in *Lammers*, we conclude here that any "questionable" comments by the prosecutor do not warrant a new trial when considered in the context of the prosecutor's references to the evidence. *See id.*, ¶25.

¶29 Ganta argues that the prosecutor's statements resulted in plain error because, "[a]t bottom, this was a he-said, []he-said case where Ganta said he had permission and L.M. said 'not so.'" We disagree that this case rested solely on credibility. As referenced in the prosecutor's closing arguments, there was substantial circumstantial evidence indicating that Ganta procured and used the credit card without L.M.'s knowledge or permission.

*Due Process at Sentencing*

¶30 Ganta argues that the circuit court violated his right to due process at sentencing when the court sentenced him based on his conduct on the day of trial. We reject this argument for the reasons below.

¶31 At sentencing, the prosecutor asserted that Ganta made masturbation gestures while L.M. was on the witness stand at trial. The prosecutor further asserted that, upon the conclusion of trial, Ganta approached jurors and told them that they convicted an innocent man, leading one of the jurors to seek the bailiff's

11

assistance. The bailiff provided testimony that supported the prosecutor's assertions.[3]

¶32　As noted above, the circuit court imposed three years of probation, with a condition of probation that Ganta serve thirty days in jail with Huber privileges. The court considered a number of factors, including the nature of Ganta's offense, the need to deter others from similar crimes, Ganta's lack of a criminal history, and Ganta's day-of-trial conduct. The court stated that it would not have imposed the jail time but for that conduct. The court stated that this conduct was "unacceptable and goes to your character."

¶33　Appellate courts generally review a circuit court's sentencing decision for an erroneous exercise of discretion. *See State v. Alexander*, 2015 WI 6, ¶16, 360 Wis. 2d 292, 858 N.W.2d 662. However, whether the circuit court imposed sentence in violation of the right to due process is a question of law for de novo review. *State v. Coffee*, 2020 WI 1, ¶17, 389 Wis. 2d 627, 937 N.W.2d 579.

¶34　Ganta makes a number of assertions in support of his argument that he was deprived of due process at sentencing. We conclude that these assertions at most raise two colorable claims, and we reject both.

---

[3] Ganta points out that the prosecutor stated at sentencing that "I think the Court is at least familiar with" the incident in which Ganta approached jurors. Ganta asserts that this statement by the prosecutor suggests that "someone may have had an ex parte conversation with the court" regarding Ganta's conduct on the day of trial. We understand Ganta to mean that "someone" may have been the prosecutor. The prosecutor's statement at sentencing does not support Ganta's assertion that there may have been ex parte communication between the prosecutor and circuit court judge. We caution counsel against making unsupported allegations of improper ex parte communication.

¶35    Ganta first claims that he lacked notice that the circuit court would consider his day-of-trial conduct for sentencing purposes, and that he had no opportunity to be heard on the matter.  However, the circuit court provided Ganta with the opportunity to cross-examine the bailiff, and with the opportunity to speak on his own behalf during allocution.  Ganta did not assert at sentencing, and he does not assert now, that his day-of-trial conduct was mischaracterized.  Further, Ganta does not persuade us that additional notice would have allowed him to more effectively challenge the consideration of his conduct for sentencing purposes.  Accordingly, Ganta does not show that additional notice or opportunity to be heard regarding his day-of-trial conduct was necessary to provide due process.

¶36    Ganta's second claim, as we understand it, is that the circuit court's consideration of his day-of-trial conduct violated his right to due process because that conduct had no relationship to his crime.  We disagree and instead agree with the State that the circuit court permissibly considered Ganta's day-of-trial conduct as highly relevant to Ganta's character.  A defendant's character is one of several factors that the circuit court must consider at sentencing.  *See Alexander*, 360 Wis. 2d 292, ¶22.  Additionally, the defendant's demeanor at trial is a permissible factor.  *Id.*

¶37    Ganta argues that his case is "on all fours" with *Rosado v. State*, 70 Wis. 2d 280, 234 N.W.2d 69 (1975), in which our supreme court overturned a sentence that was based on alleged crimes in another jurisdiction.  *See id.* at 290-91.  We disagree that the sentence in *Rosado* is directly comparable to the circuit court's consideration of Ganta's day-of-trial conduct here.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.